WILLIAM CHANDLER *vs.* CHARLES A. DE GRAFF & others.

March 29, 1876.

Contract to Build Railroad—When Property in Material Passes from Contractor.— A contract to furnish ties and other material, and to construct and complete a definite line of single-track railroad, for a given compensation, payable in instalments as the work progresses, upon monthly estimates of the amount of work done and material furnished, is a contract for work and material, and not of sale. Until placed in the track, the property in ties furnished under such a contract remains in the contractor, even though, prior thereto, they may have been inspected by the railroad company and included in the monthly estimates.

Action to recover $5,706.12, as the agreed price of 20,379 railroad ties furnished by the plaintiff to the defendants. At the trial in the district court for Hennepin county, before *Vanderburgh*, J., the facts appeared to be as follows: The defendants, partners as De Graff & Co., had entered into three written contracts with William G. Moorhead, construction agent of the St. Paul & Pacific Railroad Company, for constructing three separate lines of single-track railway of that company, and for furnishing all the materials therefor, except the rails, splices, bolts, frogs and switches, which were to be furnished by the other party to the contracts. The material provisions of these contracts are stated in the opinion. The defendants thereupon entered into written contracts with the plaintiff, by which the plaintiff agreed to furnish to the defendants, by one contract 100,000, by another 60,000, and by another 25,000 ties, to be delivered on the lines of railroad which defendants had undertaken to construct. Subsequently the defendants agreed to take, in addition, 39,240 ties, making in all 224,240 ties. The plaintiff got out and delivered, with the ties contracted for, and at the points mentioned for delivery in the contracts, 20,379 ties in excess of the number so contracted for, all the ties delivered being piled up together along the lines of road.

By the terms of the contracts between plaintiff and defendants it is provided that "said ties so furnished and delivered are to be examined, estimated and returned by the said railroad company on or about the 1st of each month, and 90 per cent. thereof is to be paid to said first party (the plaintiff) on or about the 20th of each month; provided, however, that said second party (the defendants) shall have received their pay for the same from said railroad company." By the terms of the contracts between defendants and Moorhead estimates of the work done and materials furnished were to be made on the 1st of each and every month by the engineer of the party of the second part,

(Moorhead, construction agent, etc.,) and payments therefor to be made on the 15th day of each month.

On April 22, 1872, the defendants and plaintiff had a settlement, and the defendants paid plaintiff in full for the 224,240 ties contracted for, and gave him an order on their agent for the 20,379 ties which he had delivered in excess of the contract. In the estimate of the previous month Moorhead had included the 20,379 ties delivered by plaintiff in excess of his contracts, and the defendants had been paid on the basis of this estimate, although it did not appear that they had ever in fact laid the surplus ties in track. There was a conflict in the evidence as to whether the plaintiff knew of this payment at the time he settled with defendants and received their order for the surplus ties. The roads contracted for had never been completed, payments to the defendants having stopped in June, 1872.

The jury found for plaintiff, a new trial was refused, and defendants appealed.

*Gilman, Clough & Lane,* for appellants.

*E. C. Palmer,* for respondent.

CORNELL, J. If, at the time of the settlement between plaintiff and defendants, Moorhead, as construction agent, etc., had no right of property in the ties in controversy, nor any interest or lien thereon, under the contracts between him and the defendants, such as prevented the defendants from giving, and plaintiff from acquiring, an absolute title thereto under their agreement of settlement, it is difficult to see why the terms of such settlement are not conclusive upon plaintiff's right of recovery in this action; for if, under such settlement, the plaintiff in fact became fully reinvested with the absolute title to the ties, thereby obtaining the full benefit of the settlement according to its terms, and all the advantages which he expected to derive from it, then the fact that defendants received larger estimates and payments than they were honestly entitled to, by reason of these ties having been inspected and made the

basis in part of such estimates and payments, in no way affected any of plaintiff's rights under his settlement.

All the rights, if any, which Moorhead or the railroad company had in these ties were such as were secured to them under the contracts between Moorhead and the defendants. By these contracts defendants undertook fully to construct and complete certain designated lines of railroad, in the manner and within the times therein provided, and to furnish the requisite materials therefor, excepting such as it was expressly agreed should be furnished by the railroad company. Of the materials so agreed to be furnished by defendants were the ties necessary to be used in the construction of the road, the number of which to each mile was expressly stipulated and fixed at 2,500. The character of the work and quality of the materials were subject to the inspection and approval of the chief engineer of the company, whose duty it was, also, to make monthly estimates of the amount of work done and materials furnished, upon which the company were to make monthly payments, retaining 10 per cent. thereof as a guaranty for full performance by defendants. The compensation which defendants were to receive was fixed, under two of the contracts, at a certain sum for each mile of constructed road, and, under the other, at such sum as the different kinds of work done and materials furnished would amount to, at the agreed prices stipulated in the contract. The contract as to the Brainerd Branch contained a provision that, upon the completion of each and every thirty consecutive miles, to the satisfaction of the company or its engineer, the same should be inspected and accepted as completed; and both the other contracts contained a like provision, requiring such inspection and acceptance upon the completion of every forty-mile section. Upon full completion of the roads, and performance on the part of defendants, and the certificate of the chief engineer to that effect, the full compensation agreed upon was to be paid.

These contracts can only be treated as contracts for work and materials, and not of sale. The thing contemplated by each was a completed single-track railroad, to be constructed by defendants out of materials contributed in part by each party to the contract. This was what defendants undertook to do, and what the other party contracted for and promised compensation. The idea of a sale of ties, as such, or any of the other materials which defendants might find it necessary to furnish, in the performance of their contracts, cannot be gathered from any of their provisions. They were furnished, not on account of any agreement for the purchase or sale of ties, but in part execution of defendants' promise to build and complete a certain line of railroad, and of such a quality, and to such an extent only, as might be necessary to fulfil that specific obligation and complete that undertaking. The risk of loss was clearly defendants' until the road was inspected and accepted as provided in the contracts. If, on full completion, a surplus of ties had remained, which had not been used in the construction of the road, the railroad company could not have been compelled to receive them and pay for them, even though they might have been included in prior monthly estimates of materials furnished, upon which advance payments had been made.

No title nor property in the ties vested in the railroad company until after they had been actually placed in the track. Neither had the company nor Moorhead any lien thereon on account of advance payments, because it had not been provided for in the agreements, and there is no law authorizing a lien under such circumstances. *Andrews* v. *Durant*, 11 N. Y. 35 ; *Tompkins* v. *Dudley*, 25 N. Y. 272 ; *Adams* v. *Nichols*, 19 Pick. 275 ; *School District* v. *Dauchy*, 25 Conn. 530. The plaintiff, therefore, under his settlement with defendants, became fully reinvested with the absolute ownership of the disputed ties, free from any claim or lien on the part of Moorhead or the railroad company.

That defendants had been paid estimates based, in part, on the ties, in no way affected plaintiff's rights under the settlement, nor did it give him any right to go behind it or disregard its terms.

Hence the verdict is clearly against the evidence, the whole of which is before us, and whether this result was caused by an erroneous instruction of the court, or by a misapprehension of its reasoning on the part of the jury, is a matter of no practical importance, and need not be considered. The verdict must be set aside, and a new trial granted.

Order reversed.