WILLIAM CHANDLER *vs.* CHARLES A. DE GRAFF and another.

September 30, 1880.

**Conversion—Answer—Denial—Evidence.**—The complaint alleges that in the year 1872 the defendants "wrongfully took, carried away, and converted to their own use, a large number of railroad cross-ties, to wit, 26,000 and more ties, the property of plaintiff, and which were lying and being near the line of the Northern Pacific railroad," etc. The answer denied " that in 1872, or at any other time, said firm (the defendants) wrongfully or otherwise took, or carried away, or converted to their own use, a large number of cross-ties, to wit, 26,000, or any other number, the property of said plaintiff, as alleged in the complaint or otherwise." *Held*, this is to be taken as a denial of each of the facts alleged, which is thus mentioned in the answer, including the plaintiff's ownership. Under this denial it was competent for defendants to prove that the ties referred to were got out and delivered on the railroad by plaintiff for them.

**Same—Contract to furnish Ties—Confusion of Goods.**—Plaintiff and defendants had five contracts for the delivery, by the former to the latter, of different quantities of ties, the aggregate number to be delivered, under all the contracts, being 224,240 ties—some to be delivered on the line of the Northern Pacific railroad, some on the line of the St. Paul & Pacific, and others on the line of either road. The plaintiff delivered on both lines considerably more than all the contracts called for, and as they were from time to time delivered and inspected, and included in the estimates by the railroad companies to defendants, they credited plaintiff with the ties delivered, without reference to any particular contract, except that, the price under one contract being 30 cents per tie, and under all the others 28 cents per tie, the number at each price was specified in the accounts. From time to time defendants made payments to plaintiff, generally on account of ties delivered, without reference to any particular contract. As to the places of delivery the contracts do not appear to have been strictly regarded. There were delivered on the line of the St. Paul & Pacific road about 25,000 less than the contracts required to be delivered there, and on the line of the other road a great many more than the contracts required or permitted to be delivered there. After the delivery of the ties the parties had a settlement, upon which it was found that plaintiff had delivered on both lines 20,359 ties more than all the contracts called for. The defendant then paid him the balance unpaid for 224,240 ties, and gave him an order on their agent, as follows: "APRIL 22, 1872. *Mr. G. N. Pierson*—DEAR SIR: There were inspected and accepted 20,359 ties in excess of Mr. Chandler's contracts. You will, therefore, deliver that number to him,

and take such means as may be necessary to reinvest said ties in him. Yours, etc., DE GRAFF & Co." It does not appear that the 20,359 ties last delivered, or any of them, could be distinguished from the others. Soon after, defendants carried away, according to plaintiff's evidence, all, and, according to their evidence, part, of the ties on the line of the Northern Pacific road, but it does not appear that they carried away any of those on the other line, of which there were about 50,000. *Held*, that it was proper for defendants, upon showing that they left ties on the Northern Pacific line, to show how many, and what became of them—as that they were burned; also that the railroad company had paid defendants' estimates, including all the ties delivered, is immaterial; also that after the settlement, and until the 20,359 ties called for by the order given to plaintiff should be separated from the others, he had not the title to any specific ties; also that the defendants had a right to take out of all those delivered 224,240 as their portion of the ties, if they left for plaintiff enough to meet the order given him; also that they were not bound to leave for him that number of ties of those on the line of the Northern Pacific road; and it not appearing that they carried away any of those on the line of the St. Paul & Pacific, (of which there were many more than enough to satisfy the order given to the plaintiff,) it does not appear that they have done what they had not a right to do.

Appeal by plaintiff from an order of the district court for Ramsey county, *Wilkin*, J., presiding, refusing a new trial.

*E. C. Palmer*, for appellant.

*Gilman & Clough*, for respondents.

GILFILLAN, C. J. Many of the questions raised by the plaintiff are practically disposed of by the decision of a matter of pleading. The complaint alleges that in the year 1872 the defendants "wrongfully took, carried away, and converted to their own use a large number of railroad cross-ties, to wit, 26,000 and more ties, the property of said plaintiff, and which were lying and being near the line of the Northern Pacific railroad, between a point thereon ten miles east of Brainerd, Minn., and a point near the crossing of the Crow Wing river of said last-named railroad in said state." The answer denies "that in 1872, or at any other time, said firm (the defendants) wrongfully or otherwise took, or carried away, or converted to their own use, a large number of railroad cross-ties, to wit, 26,000, or any other number, the property of said
14

plaintiff, as alleged in the complaint or otherwise." Plaintiff claims that this amounts only to a denial of the taking and conversion, and admits all the other facts grouped together under the allegation in the complaint, including his ownership. We think not, and that it is to be taken as intending to deny every one of the facts so alleged, and which is mentioned or referred to in the denial, including the ownership of plaintiff. The plaintiff evidently understood his property in the ties as denied, for at the trial he introduced evidence to prove that he owned the ties which were taken away by defendants. This he did by showing that he got out and placed along the line of the railroad a large number of ties. In order to prove that the ties so placed along the line of the railroad were theirs and not plaintiff's, it was proper for defendants to introduce the contracts between them and plaintiff under which he got out and placed the ties there.

There is nothing in the objection to the witness Morris stating his estimate of the number of ties at Glyndon. He saw them, and had shown himself competent to form an estimate of the number. The tie inspector's book introduced by defendants was barely competent, if competent at all; but, so far as we can get at its contents, its introduction could not have done any harm. So far as it showed the number of ties got out by plaintiff for defendants, it was merely superfluous. The number of those ties was fully shown by other evidence, and does not appear to have been controverted on the trial; and so far as it showed that others than plaintiff had got out for defendants, and delivered at other places, ties not involved in this controversy, it is impossible to see how it could prejudice any one. So, whether the book was competent or not, a new trial ought not to be granted because of its admission.

We think evidence of ties having been burned admissible. Defendants claimed, and offered evidence to show, that when they removed the ties which they were entitled to carry off, they left enough to satisfy the plaintiff's claim. Evidence that, after the defendants took away their ties, there were

others, such as plaintiff claims, left on the ground, and how many, and what became of them, was, in the shape which the case took upon the trial, certainly competent. That defendants had been paid by the railroad company for all the ties which the plaintiff got out for them, did not affect their title to the ties, as was decided between these same parties in 22 Minn. 471. Evidence of that fact could not tend to prove that they removed the ties. Such evidence would have been wholly immaterial, and it was properly excluded. We cannot see that Williams testified, in reference to plaintiff's account, to anything that did not appear from the account itself introduced by plaintiff.

This brings us to the charge of the court. Several contracts for the delivery of ties by the plaintiff to defendants were proved—one to deliver 100,000 on the line of the St. Paul & Pacific railroad, or on the line of the Northern Pacific railroad; one to deliver 60,000 on the line of the St. Paul & Pacific railroad; one to deliver 25,000 on the line of the Northern Pacific railroad; one to deliver 25,000, no place of delivery being shown; and another for 14,240, on the line of the St. Paul & Pacific. The aggregate to be delivered under all the contracts was 224,240 ties. Plaintiff actually delivered for defendants on the lines of the two railroads a large number in excess of that called for by all the contracts. Less were delivered on the line of the St. Paul & Pacific railroad than the contracts required to be delivered there, and more on the line of the Northern Pacific railroad than the contracts required or authorized to be delivered there. Shortly before the taking complained of, the parties appear to have had a settlement in respect to the ties delivered. On this settlement it was found that plaintiff had delivered 20,359 ties more than were called for by all the contracts. The defendants then paid him the balance then unpaid for the 224,240 ties called for by all the contracts, and took his receipt for such payment, and gave him an order upon their agent for the ex-

cess of ties found to have been so delivered, in the following words and figures:

"APRIL 22, 1872.

"*Mr. G. N. Pierson*—DEAR SIR: There were inspected and accepted 20,359 ties in excess of Mr. William Chandler's contracts. You will, therefore, deliver that number to him, and take such means as may be necessary to reinvest said ties in him. Yours, etc.,     DE GRAFF & Co."

So far as the method of keeping the accounts between the parties was shown—and defendants introduced plaintiff's receipt in which the account is stated, and plaintiff introduced a statement of the account from defendants' books of account —it appears that in the account no distinction was made between the several contracts, except that the price of the ties under the contract for 100,000 being 30 cents, and the price under the other contracts being 28 cents, the number of each kind was specified in the accounts. In the accounts 100,000 were credited to plaintiff at 30 cents, the remainder of the whole amount delivered at 28 cents, and in the settlement defendants paid plaintiff for 100,000 at 30 cents, and 124,-240 at 28 cents. Payments were made generally from time to time, without regard to any particular contract. Except, then, as to price of the ties, the contracts were treated as though they were all one. There was nothing in the evidence to show that it was possible to distinguish the 20,359 ties last delivered from the others.

The case presented was, therefore, that there were on the lines of the two railroads 244,599 ties, of which 224,240 belonged to the defendants, and 20,359 to plaintiff, his being commingled with and unsevered from those which he had contracted to deliver to defendants. The first, second, and third requests of plaintiff to charge the jury were on the theory that the answer admitted plaintiff's ownership of the ties, and were therefore properly refused. His fourth, fifth, seventh, and eighth requests were based on the assumption that

the excess of ties delivered by plaintiff beyond what his contracts called for, and those which on the settlement the parties agreed should be returned to plaintiff, were among those delivered on the line of the Northern Pacific railroad, and that defendants were bound to leave for plaintiff, of those on that line, enough to satisfy the order given him on the settlement, and if they took away all on that line, they were liable for the excess of ties to which he was entitled.

The charge of the court, both in giving the requests made by defendants, and in its modification of plaintiff's sixth request, was, in substance, that if plaintiff, in delivering ties under his contracts with defendants, commingled with them a quantity in excess of his contracts, he could not claim those last delivered as being the excess; and if defendants took from the common lot, leaving for plaintiff a number equal to the excess, though they might not be those last delivered, they are not liable; that if the ties were so commingled that the excess could not be distinguished from the other ties, either party might take from the common lot the number of ties to which he or they were entitled, and neither would be liable to the other except for taking more than his or their proportion; that after plaintiff's acceptance of the order, on the settlement with the defendants, his right was simply to take from the common lot the number he was entitled to; and until they were so separated from the common lot, defendants could not be liable for taking any of the ties, provided they left as many as belonged to plaintiff; that, even if defendants did take away those to which plaintiff was entitled, if they did so innocently and unknowingly, they would not be liable until plaintiff demanded his ties from them; but if they took the ties knowing that they did not leave enough for the excess belonging to plaintiff, they were liable without a demand.

♦We do not think there is any error in the charge in stating the rights of the parties prior to or independent of the settlement, and order given upon it. But it is certain that after the settlement and acceptance of the order plaintiff did not

own any specific ties of all that he had delivered. To give to him title to any specific ties, it was necessary that the ties called for by the order should be separated from the common lot; nor was the common lot from which they were to be taken confined, as plaintiff claims, to those which had been delivered on the line of the Northern Pacific railroad. The settlement was not for those ties alone, but for the aggregate of all the ties delivered, without regard to where they were delivered, or to any particular contract under which they were delivered. In the dealings between the parties, those contracts, so far as they specified places of delivery, do not seem to have been strictly regarded. Thus, two of the contracts required about 75,000 ties to be delivered on the line of the St. Paul & Pacific; the others required or authorized about 150,000 to be delivered on the line of the Northern Pacific; but only about 50,000 were delivered on the first of these lines, and about 195,000 on the last; and yet, without regard to the place of delivery specified in the contracts, or to the place where actually delivered, the defendants in their accounts credited plaintiff with them as fast as delivered, made general payments from time to time on the account, and on settlement paid him the balance for 224,240 ties, the aggregate of all the contracts, without any specification of where the ties thus paid for were, and gave him the order for the 20,359, without specifying from what ties other than the entire lot delivered they should be taken. Had plaintiff desired that the 20,359 ties to be returned him should be taken out of any particular part of all those delivered by him, he should have insisted on it at the time of the settlement. In view of these facts, and under this settlement, defendants might take the 224,240 ties they had paid for from the entire lot delivered, without regard to the place where they were at the time,— whether on one line of railroad or the other,—and if they took no more than their proportion, leaving enough to satisfy plaintiff's order, they did only what they had a right to do, and cannot be liable. This disposes of the case, for it does

not appear, and plaintiff does not claim, that any of the ties, delivered on the line of the St. Paul & Pacific, much more than enough to fill plaintiff's claim, were taken by defendants.

In plaintiff's brief a good deal is said about "culls," by which we understand ties which, on inspection, were rejected, though it is not very clear what is claimed on account of them. It does not appear that on the trial any claim was made on account of "culls," and, if there had been, the evidence is not such as would have justified a verdict for plaintiff on account of them. The newly-discovered evidence, one of the grounds of the motion for a new trial, is merely cumulative.

Order affirmed.