MONTO ROSENTHAL & others *vs.* SHEPARD BROADCASTING SERVICE, INC.

Suffolk.   March 3, 1937. — February 1, 1938.

Present: RUGG, C.J., FIELD, LUMMUS, & QUA, JJ.

*Corporation,* Practice of law.  *Attorney at Law.  Supreme Judicial Court,* Moot question.  *Equity Jurisdiction,* Retention for assessment of damages.  *Equity Pleading and Practice,* Costs.

A radio broadcasting corporation violated G. L. (Ter. Ed.) c. 221, § 46, as amended by St. 1935, c. 346, § 1, by broadcasting a program known as "the "Court of Common Troubles," wherein legal opinions and advice were given on real problems confronting persons presenting them of a nature usually dealt with by practicing attorneys.

The discontinuance by a radio broadcasting corporation of a radio program violating the statutory provisions prohibiting the practice of law by corporations shortly after the institution under § 46B, inserted in G. L. (Ter. Ed.) c. 221, by St. 1935, c. 346, § 2, of a suit to enjoin it but not seeking damages, where there was no likelihood that the program would be resumed by the corporation, required the dismissal of the proceedings; but costs were awarded the petitioners.

PETITION IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on November 24, 1936.

The case was reserved for the full court by *Field,* J.

*M. Rosenthal, (E. I. Simons & M. A. Moscow* with him,) for the petitioners.

*J. A. Farrer,* for the respondent, submitted a brief.

RUGG, C.J.   This petition was instituted on November 24, 1936, by three members of the bar of Massachusetts, residents of Boston, against the respondent, a corporation duly organized and having a usual place of business in Boston.   The petition was brought pursuant to § 46B, in-

serted in G. L. (Ter. Ed.) c. 221, by St. 1935, c. 346, § 2. The allegations of the petition set forth violations of G. L. (Ter. Ed.) c. 221, § 46, as amended by St. 1935, c. 346, § 1, by the respondent in that it broadcasted to the public radio programs known as the "Court of Common Troubles" and "Goodwill Court." The purpose of the petition is to restrain the respondent from broadcasting these programs on the ground that they constitute illegal practice of law. The statute (St. 1935, c. 346, § 1) forbids a corporation to "give legal advice in matters not relating to its lawful business, or practice law." With reference to this statute it was said in *Matter of Shoe Manufacturers Protective Association, Inc.* 295 Mass. 369, "All practice of law by corporations is now expressly forbidden by statute. . . . In addition to this sweeping prohibition against the practice of law the statute also expressly forbids the doing by corporations of certain specified acts comprised in or related to such practice." The case was referred to a master whose report has been confirmed and whose findings are not in dispute. The case has been reserved without decision for our determination on the pleadings and the report of the master.

The material facts are these: The respondent maintained and operated a broadcasting station in Boston as a commercial enterprise for its own profit. The respondent sold the use of its broadcasting facilities to individuals or corporations for fixed periods of time during which such persons or corporations, under agreement with the respondent, produced programs for broadcasting. Such a purchaser was called a sponsor. There were other programs, called sustaining programs, which were produced and paid for by the respondent. The programs of the court of common troubles originated in the studio of the respondent in Boston. The goodwill court program originated in New York, was transmitted over a telegraph wire from New York to the respondent's studio in Boston, and was relayed by the respondent through its Boston station. The same program was also "broadcast over sixty-six different channels" in thirty-nine different States. This program was sponsored

by a corporation interested in the sale of a particular brand of coffee and was interspersed with remarks advertising that coffee.

The program of the court of common troubles was conducted in this fashion: The announcer stated that the opinions to be expressed on the cases presented were to be based on the law of Massachusetts, and that there was no intention to offer legal advice as a substitute for that given by attorneys. The names of two judges in the district or municipal courts of this Commonwealth were then given and a member of the bar was introduced as conductor. It was announced that anyone was invited to state his problems and that the purpose was to furnish enlightenment as to the law of Massachusetts. The conductor then asked some person to present his problem. That was done and the conductor clarified the matter by further questions if thought desirable. Then the advisory answer was given by one of the judges. The general practice pursued in determining the persons to appear before the microphone was for the conductor, prior to the broadcast, to meet various individuals who had written their problems and sent them either to the respondent or to the conductor. The conductor exercised his judgment in the selection of the particular persons whose problems were to be presented. Opportunity was thus afforded for consideration beforehand of the problem both by the conductor and by the judge who expressed an opinion at the time of the broadcast. The master's report sets forth numerous instances where advice was given touching proper registration of an automobile, remedies for nonpayment of rent by a tenant, the right of an administratrix to recover possession and control of personal property belonging to the estate, the claim of a tenant for fixtures installed by him, the right of a young woman to an engagement ring after termination of the engagement, and divorce. Most of the cases stated involved questions of civil rights and liabilities and were of a nature usually dealt with by practising attorneys in the course of giving advice to clients in office consultation and

by judges of trial courts in the consideration of cases before them while on the bench.

The programs of the goodwill court were produced in New York and transmitted to the respondent's studio in Boston. The respondent received a money consideration for the use of its facilities in broadcasting these programs. The methods pursued in the presentation of the goodwill court program were similar to those already described as to the presentation of the court of common troubles program, except that the conductor, so far as known, was not a member of the bar. The two judges who acted at each broadcast were at some times presiding judges in various courts in the State of New York and at other times either retired judges of the State of New York or presiding or retired judges of the State of New Jersey. There are recited in the master's report various instances of the giving of advice over the broadcasting facilities of the respondent touching the legal problems arising in the usual experiences of life. The announcer at the outset of the program stated that the opinions to be expressed were based upon and in accordance with the law of New York and not in accordance with that of any other jurisdiction; that the law was different in different jurisdictions; and that there was no design in giving legal advice to supplant lawyers.

The goodwill court has been discontinued since December 20, 1936, when public statement to that effect was made. No program of the court of common troubles has been presented since December 19, 1936, although no public statement has been made concerning it. The time theretofore allotted to these programs by the respondent has been devoted to programs of a different character.

The respondent does not argue that it may practise law. Plainly it cannot lawfully do so. *Opinion of the Justices,* 289 Mass. 607. *Matter of Maclub of America, Inc.* 295 Mass. 45, 47. It is clear that the programs presented by the court of common troubles were within the sweep of the prohibitions of St. 1935, c. 346, § 1. The giving of advice as to legal matters has been commonly recognized

as an important part of the activities reserved for members of the bar and constitutes the practice of law. The instances of giving such advice by the respondent stated in the master's report form the practice of law. *Opinion of the Justices,* 289 Mass. 607, 613. *Matter of Shoe Manufacturers Protective Association, Inc.* 295 Mass. 369, 372, 373. *People* v. *Association of Real Estate Tax-payers,* 354 Ill. 102, 109, 110. *Fitchette* v. *Taylor,* 191 Minn. 582, 584. *People* v. *Alfani,* 227 N. Y. 334. The giving of legal advice in the manner described in the master's report not only violates the confidential relation of an attorney and client but is inconsistent with the traditional standards of the bar and the courts.

The argument that these programs were designed as gratuitous service to indigent persons is without foundation. There is no finding that the persons seeking and receiving such advice were indigent. There is an express finding that the respondent was conducting these programs as a part of its commercial adventure for profit. There is no finding that the motives of the respondent were charitable. The form which the activities of the respondent take is illegal and contrary to the statute and against the policy of the Commonwealth as there declared.

It is not necessary to differentiate as to the liability of the respondent touching these two programs. No discussion is required to show that the respondent was liable under the statute for the one originated in Boston and broadcasted from its Boston studio. See *Coffey* v. *Midland Broadcasting Co.* 8 Fed. Sup. 889.

The respondent has discontinued both series of programs assailed by the present petition. That was done within less than a month after this petition was instituted. The circumstances attending such discontinuance are not set out with much fulness in the record. The inference seems strong, however, that there is no likelihood that these programs will be resumed by the respondent. The question as to the legality of these programs has become moot by conditions arising since the institution of the present proceeding. *Sullivan* v. *Secretary of the Commonwealth,* 233

Mass. 543. *Swig* v. *State Ballot Law Commission*, 265 Mass. 19. *Independent–Progressive Party* v. *Secretary of the Commonwealth*, 266 Mass. 18. *Brown* v. *City Council of Cambridge*, 289 Mass. 333. *Mullholland* v. *State Racing Commission*, 295 Mass. 286, 289. In these circumstances it seems plain that there is no ground for the issuance of an injunction. That relief would be of no use to the petitioners and would be apparently of no value in aid of the public welfare. *Hubrite Informal Frocks, Inc.* v. *Kramer*, 297 Mass. 530, 533–534, and cases there collected.

There is no claim for damages set forth in the petition and there is no finding as to damages. The case cannot be retained for the assessment of damages. No injunction ought to issue on the facts disclosed. There appears to be no reasonable basis for apprehension that the programs may be resumed, so that the issues raised by the petition do not remain justiciable. *Commercial Cable Co.* v. *Burleson*, 250 U. S. 360, 362. It follows that the petition must be dismissed.

The question of costs remains. The allowance of costs in equity always rests in the court's discretion. G. L. (Ter. Ed.), c. 261, § 13. The petitioners brought this proceeding under statutory authorization for the public welfare and not for selfish reasons or for pecuniary profit. The case has become moot because of the voluntary conduct of the respondent in ceasing to continue to give the broadcasts. It seems to us proper to award costs to the petitioners. *Cohen* v. *Levy*, 228 Mass. 383. *Daudelin* v. *Lee*, 258 Mass. 7, 9. *Perkins* v. *Horte*, 282 Mass. 301. *Heitmuller* v. *Stokes*, 256 U. S. 359, 362. A decree may be entered dismissing the petition because no relief can be afforded in the circumstances, but with costs to the petitioners.

*Ordered accordingly.*