TOWN OF SAUGUS *vs.* B. PERINI & SONS, INC.

Essex.   November 15, 1939. — March 15, 1940.

Present: FIELD, C.J., DONAHUE, LUMMUS, DOLAN, & RONAN, JJ.

*Zoning. Equity Jurisdiction,* To enforce zoning by-law. *Equity Pleading and Practice,* Decree.

In a suit in equity by a town to enforce its zoning by-law, the refusal of a mandatory injunction requiring the defendant to refill a pond on his premises created by the removal of gravel and other materials in violation of the by-law disclosed no error in view of findings as to the nature of the neighborhood and other circumstances; and, it appearing that the removal of the materials had ceased several months before the filing of the bill and it not appearing that the defendant intended further removal thereof, a decree dismissing the bill without prejudice was proper.

BILL IN EQUITY, filed in the Superior Court on September 30, 1938.

A decree dismissing the bill without prejudice was entered by order of *Hurley,* J.

*L. F. Davis,* for the plaintiff.

*A. L. Taylor,* (*D. C. Kadra* with him,) for the defendant.

RONAN, J. The town complains that the defendant, in violation of the zoning by-law, has excavated and removed for the purposes of sale large quantities of sod, loam, sand, gravel and stone from the defendant's premises in Saugus, and prays for an injunction to restrain further excavation and to restrain the defendant from maintaining a pit or hole that has resulted from the excavations heretofore made and which is filled with stagnant water. The case was referred to a master whose report was confirmed. The town appealed from a final decree which recited that no excavation had been made since December 13, 1937, and dismissed

the bill without prejudice to the right of the town to bring a bill whenever it appears that the defendant intends to make any further excavations.

The defendant entered into a written contract with the Commonwealth for the reconstruction of a section, a little less than four and seven tenths miles in length, of a State highway located in the towns of Lynnfield and Saugus and known as the Newburyport Turnpike. The compensation to be paid the defendant was fixed at a certain rate per unit of measurement on certain portions of the finished work, and in other instances was based upon a unit quantity rate for various materials used and employed in the prosecution of the work. The contract contained about ninety items aggregating $1,349,895.25, one of which was for two hundred thirty-two thousand two hundred cubic yards of gravel, complete in place at fifty-seven cents per cubic yard. The defendant agreed to furnish all equipment, machinery, tools and labor, "to furnish and deliver all materials required to be furnished and delivered," and to do and perform all work required to be done in conformity with the contract. The material that the defendant excavated from the premises in question was used by it in performing this road construction contract.

Section 17A of the zoning by-law forbids the removal for sale of sod, loam, sand, gravel or stone from single or general residence districts unless special permission is granted by the selectmen in accordance with section 17, which provides that upon a written application for such permission, and after giving notice as therein provided, the selectmen shall hold a public hearing and may, subject to certain restrictions, grant permission with such conditions as will protect the community. The defendant's premises are located in a single residence district described in the zoning by-law. This by-law is to be administered by the building inspector. He was authorized to issue an occupancy permit for the use of buildings, structures and premises that comply with the by-law.

The furnishing of the gravel for highway purposes must be considered together with the entire transaction of which

it was a part. The material was required for the reconstruction of the road and when put in position on the site became a part of the finished highway. The Commonwealth was not interested in the purchase of material. Its aim was to secure a highway constructed in accordance with the contract. The defendant had undertaken to supply the materials in order to perform the work and to turn over to the Commonwealth a section of the highway reconstructed in compliance with the contract. The contract required much more than a mere aggregation or collection of the materials enumerated in the quantities specified. Some of the materials had to be fabricated and prepared before they could be incorporated into the road. Some of the material lost its identity by being mixed with other materials. All of the material was to be wrought into a single completed section of highway. The essence of the transaction was not the purchase and sale of personal property. If the contract were oral it would be valid in so far as any defence based on the statute of frauds could be interposed. While the amount of labor involved in the performance of the work is not specifically disclosed, it is plain that the contract is one for work and labor rather than for the purchase and sale of personal property. *Mixer* v. *Howarth*, 21 Pick. 205. *Goddard* v. *Binney*, 115 Mass. 450. *New England Cabinet Works* v. *Morris*, 226 Mass. 246. *Pope* v. *Brooks*, 249 Mass. 381. *M. K. Smith Corp.* v. *Ellis*, 257 Mass. 269. *Walstrom* v. *Oliver-Watts Construction Co.* 161 Ala. 608. *Frederick Raff Co.* v. *Murphy*, 110 Conn. 234. *Underfeed Stoker Co.* v. *Detroit Salt Co.* 135 Mich. 431. *Chandler* v. *De Graff*, 22 Minn. 471. *Brown & Haywood Co.* v. *Wunder*, 64 Minn. 450. *Pitkin* v. *Noyes*, 48 N. H. 294. *York Heating & Ventilating Co.* v. *Flannery*, 87 Pa. Super. Ct. 19. *Scales* v. *Wiley*, 68 Vt. 39.

Whether a contractor is a vendor of the materials he supplies for the completion of a public structure has recently been decided in determining whether the contractor was liable for a sales tax upon the value of the materials so supplied. In *St. Louis* v. *Smith*, 342 Mo. 317, an attempt was made to impose a sales tax on the city for the value of

materials furnished to it under three contracts, one for the
erection of a hospital and the other two for the construc-
tion of a sewer and of a street paving, on the ground that
it was the vendee of these materials and so liable for the
tax which, in this instance, was by its terms imposed upon
the vendee who purchases for his own use or consumption.
The court pointed out that it was necessary for the con-
tractor to supply the materials in order to perform his
contracts and that it could not be said that the contractor
sold such materials to the city or that the latter was a
purchaser of such materials. To the same effect are *Her-
lihy Mid-Continent Co.* v. *Nudelman*, 367 Ill. 600, *State* v.
*J. Watts Kearny & Sons*, 181 La. 554, *State* v. *Christhilf*,
170 Md. 586, *Atlas Supply Co.* v. *Maxwell*, 212 N. C. 624,
*Albuquerque Lumber Co.* v. *Bureau of Revenue of New Mexico*,
42 N. M. 58, and *Commonwealth* v. *Gormly*, 173 Penn. St.
586. Compare *Moore* v. *Pleasant Hasler Construction Co.*
50 Ariz. 317; *Wiseman* v. *Gillioz*, 192 Ark. 950.

In the case at bar the fact that there was a specific price
for the gravel did not make the contract a divisible one.
The price was not for the gravel furnished alone but for
the gravel supplied "complete in place." The fixing of
the price of this commodity was the method adopted in
conjunction with fixing the unit prices for other materials
and for finished portions of the work to determine the total
compensation to which the defendant would be entitled
upon the completion of the work. The omission of the
gravel would, as a practical matter, render the work im-
possible. The computation furnished by the contract for
the determination of the amounts to be paid for the com-
pletion of the work did not make the contract a series of
separate contracts each for the purchase and sale of a par-
ticular commodity. *Fullam* v. *Wright & Colton Wire Cloth
Co.* 196 Mass. 474. *Cumberland Glass Manuf. Co.* v.
*Wheaton*, 208 Mass. 425. *Bullard* v. *Eames*, 219 Mass. 49.
*Hughes* v. *Rendle Corp.* 271 Mass. 208. The principal conten-
tion of the plaintiff that the defendant violated § 17A fails.

The defendant, however, had never received any occu-
pancy permit authorizing the use of its land for the exca-

vation and the removal of sand, stone and gravel. The defendant's premises were located in a single residence district where the use of the land was authorized for only certain designated purposes which did not include the removal and carrying away of the sand, stone and gravel. The by-law, section 4, expressly provided that "no land, building, structure, or parts thereof shall be used, except for one or more of" the designated purposes. This was a prohibition against the removal of soil from the premises for any purpose, excepting that the removal for the purposes of sale was permitted if the provisions of section 17A were observed and an occupancy permit was secured. It is plain that the defendant did not come within the requirements of section 17A, but that the excavation and the transportation of the soil from its land were a violation of section 4 as they were a use not permitted by this section. *Wilbur* v. *Newton,* 302 Mass. 38. *Lexington* v. *Menotomy Trust Co.* 304 Mass. 283.

The bill contains a prayer for an injunction restraining further excavation and removal of the soil, and maintenance of the pond caused by the excavation, which we construe as the equivalent of a prayer that the excavation be refilled. *Edgecomb* v. *Edmonston,* 257 Mass. 12. The town was authorized by G. L. (Ter. Ed.) c. 40, §§ 25–30A, as amended by St. 1933, c. 269, § 1, to seek an injunction to prevent violation of its zoning by-law and jurisdiction was conferred upon the Superior Court to grant such relief. The town, however, in bringing and prosecuting the bill, is not asserting any private right but is merely seeking compliance with its local regulations which were adopted in furtherance of the interest of the public. *Taunton* v. *Taylor,* 116 Mass. 254. *Worcester Board of Health* v. *Tupper,* 210 Mass. 378. *Kelley* v. *Board of Health of Peabody,* 248 Mass. 165. *Lexington* v. *Bean,* 272 Mass. 547. And the power conferred upon the Superior Court to grant injunctions is to be exercised in accordance with the well settled principles granting this form of equitable relief. *Fuller* v. *Melrose,* 1 Allen, 166. *Prince* v. *Boston,* 148 Mass. 285. *Conners* v. *Lowell,* 246 Mass. 279.

The defendant was granted a permit by the selectmen on January 14, 1937, to excavate "at the old pit, and not to go below the level of Forest Street." This permit referred to a locus "which was at some indefinite time in years gone by used as a gravel pit by former owners." The selectmen on January 18, 1937, granted a second permit to excavate and remove the soil from another portion of the defendant's premises. This permit was revoked by the selectmen on March 22, 1937, but the defendant, notwithstanding the revocation and a verbal notice by the building inspector to the defendant's foreman in April, 1937, that excavating must be stopped and the defendant would have to go for a hearing before the selectmen, commenced to excavate under this second permit on March 29, 1937, and had up to July 10, 1937, excavated thirty-five thousand seven hundred fifty-nine cubic yards of materials, creating a pit or hole about five hundred feet long, two hundred fifty feet wide and with an average depth of twelve feet. This excavation has become filled with water, creating a pond with no outlet. All excavation was enjoined upon the filing by the plaintiff of a bill in equity against the defendant on May 21, 1937. A temporary restraining order issued which was later modified by stipulation of the parties. Thereafter the selectmen granted five permits to the defendant to excavate upon five different locations upon its property but not including the locus where the pond is now located. The town counsel acting under instructions from the selectmen agreed to the entry on August 25, 1937, of a final decree dismissing the bill. No further excavation has since been made by the defendant at the place where the pond is now located and all excavation ceased on December 13, 1937. The master does not find that the defendant intends to make any further excavation or removal of soil from any of its premises. The present bill was filed on September 30, 1938.

Upon the master's report the plaintiff is not entitled to an injunction to prevent further excavation, *Rosenthal* v. *Shepard Broadcasting Service, Inc.* 299 Mass. 286; *Sullivan* v. *Barrows*, 303 Mass. 197, and the right of the plaintiff to bring another proceeding if excavations were undertaken

was expressly reserved in the final decree dismissing the present bill without prejudice. The consent decree dismissing the first bill was not an adjudication upon the merits and it did not settle the issue as to whether the defendant was violating section 17A, which was the only ground alleged in that bill. *New York Central & Hudson River Railroad* v. *T. Stuart & Son Co.* 260 Mass. 242. *Wight* v. *Wight,* 272 Mass. 154.

The parties from the beginning appear to have proceeded upon the theory that the operations of the defendant came within the provisions of section 17A. A permit under this section even if granted after all the prescribed formalities were taken would not authorize the defendant to remove the soil for the purposes of completing its contract with the Commonwealth. Indeed, the last five permits restricted the defendant in using the excavated material for any other purpose. In order to authorize the defendant to excavate for this purpose, an amendment to the by-law was necessary. This the defendant never sought and the town never suggested. The defendant was granted seven permits in all, not one of which, for reasons already given, was valid. The parties must be presumed to have acted in good faith in seeking and securing the permits even if it subsequently appeared that the selectmen were not empowered to grant any permits for the specific purpose for which they were expressly issued, and even if the defendant did not heed the action of the selectmen in purporting on March 22, 1937, to revoke one of the permits. The defendant never received any occupancy permit from the building inspector. The master does not find that there was any building inspector of the town when the first two permits were granted, and the present inspector, although familiar with the circumstances under which the last five permits were issued by the selectmen, has not been shown by the master's report to have ever suggested that an occupancy permit was necessary. Upon the record, it does not appear that the selectmen or the defendant ever considered the necessity of such a permit. The granting of an occupancy permit would not have validated the action of the selectmen nor would it have

brought the excavating operations within the protection of the by-law. The contention that an occupancy permit ought to have been secured seems to be an afterthought. It was not mentioned in the first bill which was filed by the building inspector in name and in behalf of the town. It first appears in the present bill, filed more than nine months after the premises had ceased to be occupied for the alleged illegal use. The operations of the defendant did not come within the by-law even though some or all of the parties apparently believed that they did.

The selectmen declined to grant any permit for further excavation at the locus where the pond is located, but they granted five new permits for excavating and removing material from five different portions of the defendant's premises. Nothing in the record discloses that the selectmen when they granted the permits and consented to a discharge of the injunction required the defendant to do anything in reference to this excavation, which the town now seeks to have refilled. The master does not report the expense that would be incurred in filling in the area now occupied by the pond. The pond has been surrounded by a wire fence and has the appearance of a natural pond. In the peculiar circumstances existing in this case, and especially in view of the location of the pond, the character of the adjoining sparsely settled section, which, in the vicinity of the Newburyport Turnpike — the main artery of travel — is "undeveloped, uneven and for the most part characterized by hills and valleys containing much ledge and boulders which would be extremely expensive to develop for residential purposes," and the nature of the surrounding territory, all of which is narrated at considerable detail in the master's report, the refusal of a mandatory injunction requiring the defendant to fill in the pond was not erroneous. Upon the facts disclosed it rested in the sound judicial discretion of the judge. *Levi* v. *Worcester Consolidated Street Railway,* 193 Mass. 116. *Smith* v. *New England Aircraft Co. Inc.* 270 Mass. 511. *Loughlin* v. *Wright Machine Co.* 273 Mass. 310. *Malinoski* v. *D. S. McGrath, Inc.* 283 Mass. 1. *Gray* v. *Howell,* 292 Mass. 400.

*Decree affirmed.*