PORTER, Adm'r, Office of Price Administration, v. NOWAK et al.

Civil Action No. 4031.

District Court, D. Massachusetts.

March 27, 1946.

134

James J. Brennan, Chief Enforcement Atty., and Solomon Thurman, Enf. Atty., O.P.A., both of Boston, Mass., for plaintiff.

Arthur T. Garvey, of Springfield, Mass., for defendants Alexander and Joseph Nowak.

WYZANSKI, District Judge.

1. *The issue.* This case arises under OPA regulations governing the sale of used motor vehicles. The question is this: When a dealer in used passenger automobiles sells a car giving the purchaser an oral warranty which he in fact honors or stands ready to honor, is the lawful maximum price (a) the price allowed an ordinary seller or (b) the price allowed a dealer furnishing a written warranty?

2. *Applicable regulations.* July 10, 1944, the Administrator of the OPA issued MPR 540, including Amendment 1(9 F.R. 6434). The regulation in Section 2 forbade the sale of cars at prices higher than certain maxima provided by Section 5. That section provided maxima for ordinary sales and for warranted sales by dealers. So far as pertinent, it stated that:

" * * * (a) For sales during the six months period beginning on July 10, 1944. To figure the maximum price * * * the seller must

"(1) Find the base price according to section 6 * * *

"(3) If the car is sold as a warranted car (as defined in section 7) by a dealer to a non-dealer, add $100.00 or, if it is higher, add 25% of the total of the base price. * * *"

Section 7(a) of the regulation reads as follows:

"Section 7. *Warranted used cars.* (a) *Definition.* A warranted used car is one in good operating condition for which the dealer furnishes to the purchaser the following warranty in writing:

"Dealer's Warranty

"The used car described below, *including any equipment named in Appendix D of Maximun Price Regulation 540,* is hereby warranted to be in good operating condition, and to remain in such condition under normal use and service for a period of 30 days after delivery, or 1,000 miles, whichever may first occur.

"We agree, if said car is delivered during the above period to our place of business, to make with reasonable promptness any repairs or replacements which may be necessary to its good operating condition in accordance with normal use and service, at a cost to the purchaser named below of not more than 50% of the normal charge for such repairs and replacements. Our normal charge is not in excess of OPA ceilings.

"This warranty does not extend to tires, tubes, paint, glass, upholstery, or to any repairs or replacements made necessary by misuse, negligence or accident.

Make of used car........................
Model ..................................
Serial number.........Body type........
Motor number.......Date of delivery....
Speedometer          Total sell-
   reading ..........   ing price .........
.....................   .....................
 Name of purchaser      Name of dealer making
                            sale
.....................   per ...............
     Address            Name of proper repre-
                        sentative thereof and
                        title
                        .....................
                            Address"

The Administrator issued various amendments to this regulation, of which the latest which affects this case was Amendment No. 5, issued February 1, 1945, effective March 1, 1945. These amendments changed certain details of the rules for sales of used cars—for example, they extended the time set in Section 5(a) so as to cover "a used car sold and delivered prior to July 1, 1945." But they left unchanged the quoted portion of Section 5(a) (3) and while they rearranged they did not in any particular material to this case vary the quoted portion of Section 7(a).

3. *Facts.* Defendants were admittedly "dealers" within the meaning of these regulations. They sold in Massachusetts on July 31, 1944, to Fred H. Pelczarski a 1941 Chevrolet Sedan for $1150; on August 26, 1944, a 1940 Oldsmobile Convertible Club Coupe to George P. Vincensi for $1050; and on March 14, 1945, a 1941 Plymouth Four Door Sedan to Ferdinand Wisniewski for $1138.

In all three instances the sale was at a price admittedly higher than the "base price" established by Sections 5(a) (1) and 6, although except in Pelczarski's case not higher than the price established by Section 5(a) (3) for a "car sold as a warranted car (as defined in Section 7) by a dealer."

In none of the three sales did defendants furnish a written warranty, although they furnished written contracts of sale.

However, certain other facts regarding these transactions were shown in the testimony. Within 30 days after the delivery of cars to them, both Pelczarski and Wisniewski each required repairs or replacements to put their cars in operating order. On the basis that under their contract of purchase they had been promised a right (and defendants were under a corresponding duty) to have their cars put in good operating order at a cost to the purchaser of not more than 50% of the normal charge for repairs and replacements they returned their cars to defendants for repairs or replacements. On the same basis defendants effectuated the repairs or replacements and charged only 50% of the normal amount. Vincensi, unlike the others, did not require any repairs or replacements within the 30 days, but his testimony shows that he was aware that he had been promised the right to have repairs within 30 days at half the normal charge.

From the facts set forth in the last paragraph, I find as an ultimate fact that in each of the three sales defendants contemporaneously with the sale gave an oral warranty in terms as broad as the written warranty described in Section 7 of MPR 540.

4. *Conclusions.* The question as to what maximum prices may be charged for used cars by a dealer who gives only an oral warranty has not hitherto been determined at least in any decision drawn to this Court's attention. The nearest case is Bowles v. Murphy, D.C., D.C., 62 F.Supp. 295, which seems to have involved a ruling that where the dealer failed to give any warranty, oral or written, he could not charge more than "the base price" stipulated in Section 5(a) (1).

In approaching this novel question, the governing rules are those stated in MPR 540 and its amendments. Those regulations were promulgated by the OPA Administrator acting under the purported authority of the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A.Appendix, § 901

et seq. For the purposes of this case, the Court assumes that the regulations are valid, Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834; M. Kraus & Bros. Inc. v. United States, 66 S.Ct. 705, and the crucial issue is how these regulations shall be interpreted.

A literal interpretation of the regulations would preclude defendants from charging more than the "base price" allowed by Section 5(a) (1). The reason for that statement is that defendants, because they gave no written warranty, failed to meet the exact words of Sections 5(a) (3) and 7 which are available to a dealer if and only if the car is a car "for which the dealer furnishes to the purchaser the * * * warranty in writing."

But a literal interpretation is not always appropriate, at least against defendants. "The policy as well as the letter of the law is a guide to decision. Resort to the policy of a law may be had to ameliorate its seeming harshness or to qualify its apparent absolutes as Holy Trinity Church v. United States, 143 U.S. 457, 12 S.Ct. 511, 36 L.Ed. 226, illustrates." Markham v. Cabell, 66 S.Ct. 193, 195; Heydon's Case, 3 Rep. 7a (1584); Chatwin v. United States, 66 S.Ct. 233; United States v. Carbone et al., 66 S.Ct. 734. Compare J. C. Gray, The Nature and Sources of the Law, 2nd Ed., p. 179; Vinogradoff, Historical Jurisprudence, Vol. I, pp. 63–71; Aristotle, Rhetoric, Bk. I, 13, p. 1374a.

If the regulations are read not literally but with an eye to their policy, it cannot correctly be said, however, that in Massachusetts oral warranties are always as good as written warranties and so fulfill the purposes and policy of the regulations. It is true that from the viewpoint of the Massachusetts Statute of Frauds, Mass. G.L.(Ter.Ed.) c. 106 § 6, an oral warranty is as good as a written one—the reason being that the warranty falls outside the statute because it is an agreement for work and labor rather than for the purchase and sale of personal property. Saugus v. B. Perini & Sons, Inc., 305 Mass. 403, 405, 26 N.E.2d 1; Mixer v. Howarth, 21 Pick, Mass. 205, 32 Am.Dec. 256; Williston, Contracts, Rev.Ed., § 509. But it is not true that from the viewpoint of the parol evidence rule an oral warranty attached to a written contract of sale is as good as a written warranty. "If the terms of the sale are in writing, extrinsic evidence of an express warranty not referred to in the

136

writing is not admissible." Glackin v. Bennett, 226 Mass. 316, 321, 115 N.E. 490, 492. MacAlman v. Gleason, 228 Mass. 454, 457, 117 N.E. 795; Williston, Contracts, Rev. Ed., § 643; Am.L.Inst., Restatement, Contracts §§ 237, 240, and Massachusetts annotations thereto. Since in the three transactions at bar defendants' contracts for the sale of the three cars were written and complete on their face, none of the purchasers could have enforced by suit a parol warranty of repair. In short, in the case at bar defendants on the date of the three transactions in issue failed to give to the purchasers the substance of what the regulations demanded as a prerequisite to the invocation of the higher maximum price specified in Section 5(a) (3).

But although they failed to give purchasers on the very day of the sale the precise equivalent of the written warranty, defendants (as shown by their readiness to render repairs at half the normal charge within 30 days after the sale and by their actual performance of such repairs) did give purchasers within 30 days after the sale the precise equivalent of the written warranty. That is, on the particular and very peculiar facts of this case the three purchasers have received everything (except a piece of paper) which the Administrator contemplated. They have received an enforced warranty which is the full equivalent of the enforceable warranty called for by Sections 5(a) (3) and 7. Defendants have kept the word of promise to the hope and broke it only to the eye. [Compare Roberts, J., in Deputy v. DuPont, 308 U.S. 488, 502, 60 S.Ct. 363, 84 L.Ed. 416; Macbeth, V, viii, 21, 22.] They have fully satisfied the underlying policy of the regulations,—for those regulations pointed to a "written warranty" not for its mystic value as a talisman, but for its practical value as a guarantee of enforcement. From these considerations it follows that under the rule in Cabell's case, which in certain situations makes the test not the letter but the underlying policy of the law, defendants are entitled to be regarded as coming within the intendment of the maximum price levels fixed by Section 5(a) (3).

■■ This result is the more satisfactory because the regulations here involved carry criminal as well as civil penalties. That is to say, if it should be held that dealers who in fact had fully performed the terms of a warranty but had wilfully failed to embody their obligation in a formal writing had violated the regulations when they charged the so-called dealer's price— that is, the price established by Section 5 (a) (3)—then such dealers would be liable to imprisonment or fine as well as subject to civil liability. Section 205(b) of the Emergency Price Control Act of 1942, as amended. And although criminal statutes and regulations are usually to be read strictly and literally at least against the prosecution, M. Kraus & Bros., Inc., v. United States, supra, they are also usually to be read with a view to their policy at least in favor of defendants. Holy Trinity Church v. United States; Chatwin v. United States; United States v. Carbone et al., supra. For the foregoing reasons my conclusion is that plaintiff is not entitled to damages on account of defendants' sales to Vincensi and Wisniewski. However, on account of the sale to Pelczarski of an auto at $69 over even the maximum price allowable to dealers plaintiff is entitled to recover three times $69 or $207 plus costs.