SELECTMEN OF SUDBURY *vs.* GARDEN CITY GRAVEL CORPORATION & others.

Middlesex.   October 7, 1937. — March 28, 1938.

Present: RUGG, C.J., FIELD, DONAHUE, LUMMUS, & QUA, JJ.

*Zoning.*

Findings by a master in a suit in equity to enjoin the operation of a sand and gravel pit in alleged violation of the town's zoning by-law, that a part of the defendant's land was zoned for residential use and a part for business purposes, but not showing that the defendant's operations were in the residential district, did not warrant a decree enjoining the defendant.

BILL IN EQUITY, filed in the Superior Court on December 12, 1936.

The defendants appealed from a final decree entered by order of *Beaudreau,* J.

*H. A. Leventhal & A. L. Levine,* for the defendants, submitted a brief.

*G. R. Farnum,* (*J. H. F. Calver* with him,) for the plaintiffs.

RUGG, C.J.   This suit in equity, begun on December 12, 1936, was brought by the selectmen of Sudbury to prevent the defendant corporation organized under the laws of this Commonwealth, hereafter called the defendant, from continuing to excavate sand from its premises in alleged violation of the zoning by-laws of the town of Sudbury.   The individual defendants are directors and officers of the defendant.   The defendant, in August, 1936, became the owner of a tract of land situated partly in Sudbury and partly in Wayland.   On this tract the defendant built a road into the rear of its premises, installed a steam shovel, and was engaged in excavating and carrying away sand and gravel for sale in towns other than Sudbury, without leave from any official in the latter town.   The case was referred to a master. His findings of fact must be accepted as final, since the evidence is not reported.   *Glover* v. *Waltham Laundry Co.* 235 Mass. 330, 334.   His report shows these facts: The total area of the tract of land owned by the defendant appears to be a little more than fourteen acres, divided roughly into three parts, one of which, containing about five and five tenths acres, lies in Wayland.   One of the remaining parts contains about four acres of level land of light and sandy soil with hardly enough covering of loam to support a growth of grass.   An apple orchard was set out on it about twenty years ago.   It was planted to crops about thirty years ago, but after two or three years was used for pasturage.   Westerly of the orchard is a partly-wooded area containing about four acres, which extends from the highway to the railroad.

The town of Sudbury, by its original zoning by-law adopted in 1931, was divided into districts to be known respectively as business districts, general residence districts, and single residence districts.   That zoning by-law was validly adopted by a majority vote of a town meeting. *Lexington* v. *Bean,* 272 Mass. 547, 550.   The master found that several amendments were subsequently adopted by a

majority vote of a town meeting. Those amendments did not become effective because they were not adopted by a two-thirds vote of a town meeting. See St. 1933, c. 269, § 1, whereby a new § 27 was inserted in G. L. (Ter. Ed.) c. 40. The plaintiffs' case must rest upon the original zoning by-law. The zoning by-law does not describe the several zones by metes and bounds, or by streets, roads or other physical objects. It does not refer to any map. The business districts comprise (1) those "used for any business or industry other than" certain specified kinds, and (4) "lands adjoining any railroad right of way, manifestly fit only for business or industry."

The plaintiffs alleged as ground for relief that the defendant "during the summer of 1936, acquired title in and control over certain land" in Sudbury "lying entirely within the . . . single residential district established" under the zoning by-law, and which is roughly described in the bill by distances, where it excavated sand and gravel. This allegation was definitely denied by the defendant in its answer. It was necessary to prove this allegation as a part of the plaintiffs' case. There is nothing in the master's report which supports the truth of this allegation. On the contrary, the master found that, outside a considerable part of the orchard and wooded area which was "suitable for residential purposes," the remainder of the land of the defendant in Sudbury, and particularly that along the irregular southern boundary and that adjoining the railroad right of way, "is manifestly fit only for business or industry." The conclusion of the master was that portions of the land of the defendant prior to and at the time of the adoption of the zoning by-law, were used in a small way for excavating and carrying away sand and gravel for sale and for the owner's use. The greatest value of the land of the defendant is for use as a gravel or sand pit. The final paragraph of the master's report on this branch of the case is this: "the maintenance and operation of a sand pit for commercial purposes on the land of the defendant corporation would not be detrimental to the health, safety, convenience, morals or welfare of the inhabitants of the town of

Sudbury." The portion of the land of the defendant described as orchard and wooded areas is suitable for residential purposes. The remainder of the land of the defendant in Sudbury, and particularly that portion along the "irregular Southern boundary" and adjoining the railroad "right of way, is manifestly fit only for business or industry." This finding of the master specifically defines a considerable portion of the land of the defendant as within the business district created by the zoning by-law. The master's report does not state the precise location on the land of the defendant of its steam shovel and the open gravel and sand pit which had been in use fifty years. A substantial area of the land of the defendant is described with exactness as within the business district of the town as zoned. There is no room left for the operation of the single residence district upon this area of the land of the defendant. The description of the single residence district comprises "all other lands in the town" not included in the other two zones. The implication from the finding of the master that the defendant "built a road into the rear of its premises" is that the sand pit was near the railroad, which might well be inferred from the sketch annexed to the master's report to be at the rear of the defendant's premises. At all events, there is no finding that the sand pit, which is the foundation of the plaintiffs' complaint against the defendant, is not located on the portion of the land of the defendant which is within the business district as zoned, and thus outside the scope of the bill.

The facts stated in the master's report do not support the decree entered in favor of the plaintiffs. It is unnecessary to consider the other points argued.

*Decree reversed.*