TOWN OF BURLINGTON *vs.* HERBERT O. DUNN & another.

Middlesex.   February 5, 1945. — May 7, 1945.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & SPALDING, JJ.

*Zoning. Constitutional Law,* Zoning. *Notice. Municipal Corporations,* Public hearing, Planning board, Town meeting. *Burlington.*

Publication of a notice of hearing in a newspaper four days before a public hearing by the planning board of a town respecting a proposal for a zoning by-law was not as a matter of law noncompliance with G. L. (Ter. Ed.) c. 40, § 27, as appearing in St. 1941, c. 320, requiring "due notice."

The planning board of a town complied with the requirement of G. L. (Ter. Ed.) c. 40, § 27, as appearing in St. 1941, c. 320, for "a public hearing" respecting a proposal for a zoning by-law, by holding only one public hearing, although after such hearing and the approval by the board of a by-law with an accompanying map for insertion in the warrant for a town meeting, and such insertion, the board amended the map and submitted only the amended map with its final report and recommendations to the town meeting.

The provisions of G. L. (Ter. Ed.) c. 39, § 10, as last amended by St. 1939, c. 182, that the warrant for a town meeting "shall state . . . the subjects to be acted upon" at the meeting and that "no action shall be valid unless the subject matter thereof is contained in the warrant," mean only that the subjects to be acted upon must be sufficiently stated in the warrant to apprise the voters of the nature of the matters with which the meeting is authorized to deal, and do not require that the warrant contain an accurate forecast of the precise action which the meeting will take upon those subjects. Per QUA, J.

Under G. L. (Ter. Ed.) c. 39, § 10, as amended, and c. 40, § 27, as appearing in St. 1941, c. 320, a town meeting, summoned to consider the adoption of a proposed zoning by-law and accompanying map set forth in the warrant for the meeting, might validly adopt the by-law and map with perfecting amendments.

A provision of the zoning by-law of Burlington, a small residential town near the city of Boston, forbidding the use of land in a residence district for the purpose of stripping and carrying away the top soil, was not unreasonable nor unconstitutional as applied to tracts of vacant land aggregating about forty-five acres located within half a mile of a number of residences.

Under G. L. (Ter. Ed.) c. 40, § 26, as inserted by St. 1933, c. 269, § 1, a zoning by-law of a town, placing about forty-five acres of vacant land in a residential district in which use for the purpose of stripping and carrying away the top soil was forbidden, did not prohibit stripping incidental to the operation of a gravel pit as it existed and was operated on a small part of the tract at the time of the adoption of the by-law, but did prohibit stripping from the remainder of the tract.

BILL IN EQUITY, filed in the Superior Court on May 17, 1944.

The case was heard by *Baker, J.*

*J. H. Devine,* (*J. R. Spence* with him,) for the defendants.

*J. J. Moss,* for the plaintiff.

QUA, J.   This bill is brought to enforce the town's zoning by-law by restraining the defendants from removing the top soil or loam from two tracts of land, one of forty-one acres and one of four and a half acres, both located on Bedford Street in the plaintiff town.   The facts appear from the pleadings and from an agreed statement of facts in which are incorporated certain exhibits. . The trial judge ordered a decree for the plaintiff and reported the case.

1. The defendants contend that the by-law is invalid because the statutory process by which alone a valid zoning ordinance or by-law can be adopted was not followed in three respects.

(a) General Laws (Ter. Ed.) c. 40, § 27, as appearing in St. 1941, c. 320, provides in part that no such ordinance or by-law shall be adopted until after the planning board, if there is one in the town, "has held a public hearing thereon after due notice given and has submitted a final report with recommendations to the . . . town meeting . . . ." It is contended that "due notice" was not given of the hearing held by the planning board on July 7, 1943, because the notice was published only four days before that day.

What is the most effective time for giving notice of such a hearing may be open to question.   It is possible to give notice too early as well as too late.   Circumstances may differ in different towns.   We do not know how often the paper in which the notice appeared was published.   In

*Rand* v. *Wilder*, 11 Cush. 294, it was held that the notice of a town meeting posted one week before the meeting was seasonably given. It was' not held that a shorter notice might not suffice. We do not imply that it would in relation to a town meeting. But a hearing before a planning board is quite different. The planning board could finally settle nothing. Its duties were preliminary and advisory only. Any person interested could present his views to the town meeting later. We are not prepared to rule that this notice was insufficient. We have dealt with this issue without considering whether it might be foreclosed against the defendants by the statement in the agreed facts that public notice of the hearing was "duly given."

(b) After the hearing on July 7 a proposed zoning by-law in which the districts were delineated by reference to an accompanying map was approved by the planning board for insertion and was inserted in a warrant for a special town meeting to be held on August 25. Before the town meeting, however, the planning board held two more meetings of which no public notice was given and as a result of which the board decided to change the map inserted in the warrant by zoning for business purposes five additional small parcels of land in scattered locations, none of which appears to have affected in any way the tracts involved in this litigation. The final report submitted by the planning board to the town meeting was accompanied by the amended map showing these changes. The defendants contend that the planning board should have held another hearing upon the proposed by-law as changed.

We see no necessity for this. The planning board, after adequate notice, held a hearing on the proposed by-law and submitted its final report with recommendations to the town meeting. The board therefore complied with the statute. This is true whether the action of the board be construed as a recommendation of the original map or of the amended map. There is nothing in the statute requiring another hearing whenever, after one hearing, the board decides to amend what had previously been proposed. The amendments were not of a fundamental character.

They did not change the identity of the proposal before the board. They were designed merely to perfect that proposal. From their terms it is apparent that they were intended to preserve permanently for business uses certain lots on which business was already being conducted. They could not deprive any landowner of any right which he already possessed, since no zoning by-law at all was then in force. Where a public hearing is required or is had before an officer or board upon a proposed measure it is at least very unusual to require or to hold successive public hearings in respect to perfecting amendments of this character. The decision in *Nelson* v. *Belmont*, 274 Mass. 35, 42–44, required by the wording of G. L. c. 40, § 30, as amended by St. 1926, c. 216, has no application to the very different wording of the present § 27 as it appears in St. 1941, c. 320. See St. 1929, c. 39; St. 1933, c. 269, § 1.

(c) At the town meeting on August 25 the town voted to adopt the by-law together with the amended map. The defendants contend that the vote was invalid because the map as adopted differed from that inserted in the warrant with respect to the five parcels mentioned above.

General Laws (Ter. Ed.) c. 39, § 10, as last amended by St. 1939, c. 182, includes provisions that the warrant "shall state . . . the subjects to be acted upon" at the meeting and that "no action shall be valid unless the subject matter thereof is contained in the warrant." This means only that the subjects to be acted upon must be sufficiently stated in the warrant to apprise voters of the nature of the matters with which the meeting is authorized to deal. It does not require that the warrant contain an accurate forecast of the precise action which the meeting will take upon those subjects. *Haven* v. *Lowell*, 5 Met. 35, 40–41. *Grover* v. *Pembroke*, 11 Allen, 88, 89. *Sherman* v. *Torrey*, 99 Mass. 472. *Whitney* v. *Stow*, 111 Mass. 368, 370. *Wood* v. *Jewell*, 130 Mass. 270, 271. *Matthews* v. *Westborough*, 131 Mass. 521, 522, 523. *Coffin* v. *Lawrence*, 143 Mass. 110. *Tuckerman* v. *Moynihan*, 282 Mass. 562, 565. The case of *Fitzgerald* v. *Selectmen of Braintree*, 296 Mass. 362, dealt with a very different situation. Moreover, G. L. (Ter. Ed.)

c. 40, § 27, as appearing in St. 1941, c. 320, contains a provision that the "town meeting may adopt, reject, or amend and adopt any such proposed . . . by-law," showing that the by-law as adopted need not exactly follow any proposal set forth in the warrant.

2. The defendants contend that the by-law is invalid because unconstitutional as applied to the removal of the loam from their land. It places their land in a district zoned for residence under regulations which would forbid its use for the purpose of stripping and carrying away the surface soil, whether or not for sale (§§ 8, 9). *Saugus* v. *B. Perini & Sons, Inc.* 305 Mass. 403, 407.

It is true that art. 60 of the Amendments to the Constitution of the Commonwealth expressly authorizing building zones in cities and towns does not apply to vacant lands, but it by no means follows that the uses of vacant lands cannot be regulated to a reasonable extent and in a reasonable manner for the promotion of the public health, safety, morals or welfare. This possibility, quite apart from art. 60, was, in effect, recognized in one of the very earliest judicial expressions on the subject, *Opinion of the Justices*, 234 Mass. 597, 602–603, before the first zoning statute in this Commonwealth was enacted. See also *Brett* v. *Building Commissioner of Brookline*, 250 Mass. 73, 77. And the constitutionality of zoning statutes which have been held valid under the Federal Constitution and in many of the States does not depend upon art. 60 or upon any equivalent express constitutional provision. *Opinion of the Justices*, 234 Mass. 597, 607–611. *Inspector of Buildings of Lowell* v. *Stoklosa*, 250 Mass. 52, 58–59. *Euclid* v. *Ambler Realty Co.* 272 U. S. 365. The statute now in force, G. L. (Ter. Ed) c. 40, § 25, as inserted by St. 1933, c. 269, § 1, authorizes a municipality to regulate the use of land as well as the construction and use of buildings thereon for the purpose of promoting the "health, safety, convenience, morals or welfare of its inhabitants," and the by-law in question by its terms applies to the use of vacant land. The question posed by the defendants' contention is therefore the one now familiar in zoning

cases, whether in its effect upon the property in question the by-law is a reasonable regulation of the use of property in the public interest or an unreasonable and arbitrary interference with the rights of private ownership, validity being presumed until the contrary is shown. *Inspector of Buildings of Lowell* v. *Stoklosa,* 250 Mass. 52, 61–62. *Spector* v. *Building Inspector of Milton,* 250 Mass. 63. *Wilbur* v. *Newton,* 302 Mass. 38, 39, 41. *Simon* v. *Needham,* 311 Mass. 560, 562, 564. *Pittsfield* v. *Oleksak,* 313 Mass. 553, 555. *Zahn* v. *Board of Public Works,* 274 U. S. 325. *Nectow* v. *Cambridge,* 277 U. S. 183.

In our opinion the by-law is a valid constitutional regulation of the defendants' use of their land. We may take judicial notice of the fact that Burlington is a small town, generally residential in character, located within commuting distance of Boston. There are approximately fifty residences within a radius of half a mile from the premises. The defendants have commenced to remove the soil by scraping it into piles with a "bulldozer" and taking it away by means of a steam shovel and trucks. The stripping of the top soil from a tract of land is not only likely to produce disagreeable dust and noise during the process, which may be prolonged, but, more important, after it is completed it leaves a desert area in which for a long period of time little or nothing will grow except weeds and brush. It permanently destroys the soil for agricultural use and commonly leaves the land almost valueless for any purpose. The effect of such an unsightly waste in a residential community can hardly be otherwise than permanently to depress values of other lands in the neighborhood and to render them less desirable for homes. If this process should be repeated upon tract after tract of suburban land the cumulative effect might well become disastrous to certain localities. The town must continue to maintain roads and public services past such blighted areas in spite of the fact that taxable values are destroyed and development retarded. All this concerns the public welfare in the constitutional sense. *Wilbur* v. *Newton,* 302 Mass. 38, 42–43. It is natural that a town of the character and situation of

Burlington should endeavor to protect itself against such consequences. Aesthetic considerations are in themselves entitled to some weight along with other considerations. *Lexington* v. *Govenar*, 295 Mass. 31, 36–37. Looking at the matter from the standpoint of the defendants, no peculiar hardship has been shown. It does not appear that stripping off the soil is the only profitable use to which the land can be put or even that such use is any more profitable than the uses to which this land and the other lands in the vicinity have previously been devoted. In any event this consideration alone would not be decisive. *Wilbur* v. *Newton*, 302 Mass. 38, 43. It seems unlikely that the defendants' property rights will be any more seriously restricted or damaged by enforcement of this by-law than are the property rights of thousands of landowners by zoning ordinances or by-laws which forbid the erection or use of buildings in residence districts for other than residence purposes. See *Simon* v. *Needham*, 311 Mass. 560, 565. In *Lexington* v. *Menotomy Trust Co.* 304 Mass. 283, we held that a town could maintain a bill to enforce its zoning by-law by restraining the stripping of loam, although in that case no constitutional question seems to have been raised or decided. The case of *North Reading* v. *Drinkwater*, 309 Mass. 200, is not in point. That case merely decided that G. L. (Ter. Ed.) c. 40, § 21 (1), authorizing towns to make by-laws "for directing and managing their prudential affairs, preserving peace and good order, and maintaining their internal police" did not authorize a by-law forbidding the removal for sale of loam. No question there arose as to the validity of a zoning by-law made under the authority of § 25, which governs zoning. See also *Selectmen of Sudbury* v. *Garden City Gravel Corp.* 300 Mass. 41.

In our opinion the case of *Pennsylvania Coal Co.* v. *Mahon*, 260 U. S. 393, cited by the defendants, decided upon peculiar facts by a divided court before the decisions of the same court in which the validity of zoning regulations was established, is not decisive here. It has been recognized in a number of the later cases that the validity of zoning ordinances in their application to particular lands

where, if valid, they would have the effect of preventing the removal of some natural product from the land is to be determined with reference to their reasonableness under the circumstances just as in cases where the limitation upon the owner's rights has to do with buildings and their uses. *Pittsfield* v. *Oleksak*, 313 Mass. 553. *Pacific Palisades Association* v. *Huntington Beach*, 196 Cal. 211. *People* v. *Hawley*, 207 Cal. 395. *People* v. *Calvar Corp.* 286 N. Y. 419. *West Brothers Brick Co. Inc.* v. *Alexandria*, 169 Va. 271. *Terrace Park* v. *Errett*, 12 Fed. (2d) 240. *Marblehead Land Co.* v. *Los Angeles*, 47 Fed. (2d) 528. *K. & L. Oil Co.* v. *Oklahoma City*, 14 Fed. Sup. 492. Compare *Bartsch* v. *Ragonetti*, 123 Misc. (N. Y.) 903, affirmed 214 App. Div. (N. Y.) 799. We think that the by-law in the present case is not unreasonable or arbitrary as applied to the defendants' land.

3. The defendants contend that they are but continuing a use existing when the by-law was adopted, and assert that they are protected by the provision in G. L. (Ter. Ed.) c. 40, § 26, as inserted by St. 1933, c. 269, § 1, that such a by-law "shall not apply . . . to the existing use . . . of land to the extent to which it is used at the time of adoption of the . . . by-law, but it shall apply to any change of use thereof . . . ." The facts bear out the defendants' contention only to a very slight extent. It appears that before the adoption of the by-law there had been a gravel pit of considerable size on one portion of the premises, and that top soil at this location had been removed to get at the gravel and had been used elsewhere. The record does not disclose the exact dimensions of the gravel pit, but it would seem to have comprised only a small portion of the total acreage. We think that the stripping of the surface soil from the whole acreage would have an altogether different effect upon the neighborhood than the operation of the former gravel pit in its original location and would amount to a change of use beyond the protection of § 26. *Lexington* v. *Bean*, 272 Mass. 547, 552–553. *Marblehead* v. *Rosenthal*, 316 Mass. 124, 128. Even if the present purpose of stripping the soil is to get at gravel beneath it, which

can hardly be the case over the whole area, that process is at least an extension of the former use and so is not protected by § 26.  See *DeFelice* v. *Zoning Board of Appeals of East Haven,* 130 Conn. 156.

A final decree is to be entered granting the plaintiff the relief prayed for as to both tracts of land, except that the defendants may remove top soil to get at and remove gravel in the location of the gravel pit as it existed at the time of the adoption of the by-law.  If necessary, a further hearing may be had to determine the exact boundaries of the area that can fairly be found to be devoted to the existing use of removing gravel.

*So ordered.*