BUILDING COMMISSIONER OF MEDFORD vs. THE C. & H. CO.
(and a companion case [1]).

Middlesex.    November 7, 1945. — March 6, 1946.

Present: FIELD, C.J., LUMMUS, DOLAN, RONAN, & SPALDING, JJ.

*Zoning. Public Health. Health, Board of. Dump. Medford. License.*
*Constitutional Law, Zoning, Police power. Municipal Corporations,*
*By-laws and ordinances, Officers and agents. Equity Jurisdiction,*
*Zoning enforcement, Health regulation, Plaintiff's clean hands. Es-*
*toppel. Equity Pleading and Practice, Parties, Decree. Certiorari.*
*Words, "Rubbish," "Refuse"*

A provision of the zoning ordinance of Medford requiring a permit by
the building commissioner approved by the board of aldermen for use
of land as a dump was not arbitrary nor unconstitutional as applied
to a vacant tract of low, marshy land in a heavy industrial district,
fit for a dump and not adaptable to ordinary use until filled.

The powers of the zoning board of appeals of Medford under G. L. (Ter.
Ed.) c. 40, § 30, as appearing in St. 1933, c. 269, § 1, were not improperly
interfered with by a provision of the zoning ordinance requiring the
approval of the board of aldermen for the issuance by the building
commissioner of a permit to use land as a dump.

A provision of the zoning ordinance of Medford requiring the approval
of the board of aldermen for the issuance of a permit for the use of
land as a dump was not invalid on the ground that it left the granting
or withholding of approval to the uncontrolled discretion of the alder-
men, where the ordinance required them to hold a public hearing on an
application for such approval and to consider "the effect [of approval]
upon the neighborhood and the city," allowed them to attach such
conditions to their approval "as will protect the community" and to
change such conditions "in the interest of the community," and re-
quired that a permit be refused if it "would result in substantial injury."

An ordinance of Medford granting to its board of health power to make
regulations for the control of dumping and of dumps and requiring a
permit therefor from that board did not deprive the board of aldermen
of all power under a provision of the city's zoning ordinance requiring
approval of the aldermen for the issuance by the building commissioiner
of a permit for use of land as a dump; the two ordinances together
left the aldermen with the power to approve the location of a dump
and the board of health with the power to control its maintenance
and operation.

---

[1] The companion case is by The C. & H. Co. against the Board of Health
of Medford.

The fact that a city had dumped refuse upon privately owned land in the city without a permit having been issued under a pertinent city ordinance did not estop the city to maintain a suit in equity to enjoin the landowner from using the land as a dump without first obtaining such permit.

A suit in equity to enjoin the use of land in a city as a dump without certain permits required by the city's zoning ordinance and by regulations of its board of health could not be maintained by the building commissioner as sole plaintiff so far as the enforcement of the health regulations was concerned; but if the city were substituted as plaintiff, the suit could be maintained for such enforcement of both the ordinance and the regulations.

Where it appeared that a dumping permit issued by a city's board of health to a landowner and later revoked had been inoperative because the landowner had failed to obtain from the building commissioner a permit, approved by the aldermen, as required by the city's zoning ordinance for use of the land as a location for a dump, the mere fact that such dumping permit had been revoked by the board of health without notice and without a hearing and solely at the request of the aldermen would not preclude the city from maintaining a suit to enjoin the landowner from dumping without such dumping permit as well as from using the land as a location for a dump without the permit required by the zoning ordinance.

Ashes produced in dwellings were included in the word "rubbish," to be construed as synonymous with refuse, in a regulation of the board of health of Medford which in effect allowed dumping of "house dirt, rubbish and waste material . . . provided that no decomposing or offensive matter shall be dumped"; but the dumping of garbage was forbidden by the regulation.

A city, as plaintiff in a suit in equity against a landowner, would be entitled to a decree enforcing a certain provision of its zoning ordinance by enjoining use of the land as the location of a dump without a permit issued by the building commissioner with the approval of the board of aldermen, and enforcing a certain regulation of the plaintiff's board of health by enjoining dumping of any decomposing or offensive matter altogether and by enjoining dumping of "house dirt, rubbish and waste material" without a permit from the board of health.

A certiorari proceeding could not be maintained by a landowner to quash the revocation of a permit where, even if the revocation was improper, the permit was in effect useless because not accompanied by another permit from a different official which the landowner had failed to obtain; no substantial injury to the landowner through the revocation was shown.

BILL IN EQUITY, filed in the Superior Court on March 10, 1945. Also a

PETITION for a writ of certiorari, filed in the Superior Court on March 14, 1945.

The cases were heard by *Brogna, J.*

Sections 19 and 20 of the zoning ordinance of Medford, as amended, were as follows: "Sec. 19. Approval of aldermen required. No permit for . . . dumps, private or public , . . . shall be issued by the building commissioner until the application therefor has been approved by the board of aldermen as provided in Section twenty. Sec. 20. Approval by aldermen. Any person or persons desiring to obtain the approval of the aldermen, for any purpose for which approval is required under this chapter, shall make written application therefor and the aldermen shall hold a public hearing thereon after such notice as they may direct and render a decision. They may make rules for such hearings and shall notify all holders of real estate who might be affected and shall at such hearings hear such owners and others who may desire to be heard. No approval shall be given by the aldermen without considering the effect upon the neighborhood and the city. A permit may be issued by the building commissioner with such conditions attached by the board of aldermen as will protect the community and such conditions, if any, shall be specified in writing on the permit, and may from time to time be changed by said board in the interest of the community. If a permit would result in substantial injury it shall be refused."

Section 19 of the regulations of the board of health of Medford, as amended, was in part as follows: "Whereas, in the opinion of the board of health the use of refuse materials in filling ponds, bodies of water, vacant lots and wet lands is a nuisance, source of filth and cause of sickness, it is therefore ordered: (a) That no person, firm, corporation shall throw into any pond or body of water, or upon any land either public or private within the limits of the city of Medford, any refuse animal or vegetable matter, or any perishable material or rubbish or filth of any kind whatsoever, except in accordance with a written permit issued from the board of health to the owner of such pond, water or land . . . (b) That the following form be and hereby is adopted in granting approval for the use of land as a dumping ground: The depositing or dumping of house dirt, rub-

bish and waste material at . . . is approved provided that no decomposing or offensive matter shall be dumped . . . [and that certain other conditions be observed]."

In the suit in equity, the following final decree was entered: "This cause came on to be heard upon the merits and was argued by counsel and thereupon, upon consideration thereof, it is ordered, adjudged and decreed that the defendant, C. & H. Co., its servants, agents and assigns, be and they hereby are permanently enjoined and restrained from using the land owned or controlled by it located between Riverside Avenue and the General Lawrence Highway within the city of Medford, for the purpose of dumping garbage, ashes or other household refuse, unless such use shall have received the approval of the board of aldermen and the authorization of the board of health of said city of Medford. It is further ordered, adjudged and decreed that the foregoing provisions of this final decree shall not prevent the said C. & H. Co., its servants, agents and assigns, from making deposits on or filling in its said land in any manner permitted within the provisions of the zoning ordinance of said city of Medford, or in any manner which does not in the judgment of the board of health of Medford make it a menace to health or property." The defendant appealed.

In the certiorari case, the judge ordered judgment for the respondents, and the petitioner appealed.

*S. R. Wrightington,* for The C. & H. Co.

*A. C. York,* City Solicitor, (*A. J. Kirwan* with him,) for the building commissioner and the board of health of Medford.

RONAN, J. The defendant in the first case has appealed from a final decree permanently enjoining it from using a certain parcel of land for the dumping of garbage, ashes or other household refuse unless such use is approved by the board of aldermen and authorized by the board of health, but allowing it to fill in its land in any manner which is permitted by the zoning ordinance and which will not, in the judgment of the board of health, make it a menace to health or property. The defendant in the first case as the

petitioner in the second case appealed from a judgment dismissing its petition for a writ of certiorari seeking to quash the action of the board of health revoking a permit to use as a dump the same premises mentioned in the bill in equity.

The city of Medford adopted a zoning ordinance in 1925 dividing the city into six districts. The C. & H. Co. purchased between 1928 and 1935 a large area of marsh land between Riverside Avenue and Mystic Valley Parkway in said Medford. This land has since the enactment of the zoning ordinance been located in a heavy industrial district where the buildings and land by virtue of § 9 of this ordinance may, subject to § 19, be used for any purpose except for dwellings or for thirty-nine specific industries like abattoirs, stock yards, rendering works, glue factories, tanneries and for use injurious to the safety and welfare of the neighborhood "because of any excessive nuisance qualities." No permit for the use of land in this district for a junk yard, sand or gravel pit and for various other uses can be issued by the building commissioner until the application is approved by the board of aldermen. § 19. This last section of the ordinance was amended on January 24, 1935, so as to include "dumps, private or public," among the uses for which the approval of the board of aldermen is required. A public hearing before the board of aldermen upon the application for a use of land for any of the purposes mentioned in § 19 is provided by § 20. The board may prescribe the conditions and terms upon which a permit is to be issued, which may be changed from time to time, and no permit is to be granted that would result in substantial injury.

The board of health of Medford adopted a regulation prohibiting dumping without a permit from it, and subsequently an ordinance was enacted on December 20, 1938, giving to this board power to make rules and regulations for the control of all dumping of refuse and of all places used for the dumping of refuse, and requiring a permit from the board. The board on November 24, 1939, granted to the defendant in the first case, hereinafter called the defendant, a permit to dump on the parcel of land in question. The board of aldermen on February 6, 1945, requested the board of health

to rescind this permit until the defendant had complied with the provisions of the zoning ordinance, which was in effect a request to revoke the permit because the defendant had not secured a permit from the building commissioner approved by the board of aldermen. The permit was revoked by the board of health on February 16, 1945, without any previous notice to the defendant and without a hearing, solely on the ground that the defendant was using its land for a dump without having obtained this approval of the board of aldermen and without determining whether such use of the land constituted a nuisance or a menace to health or property. The board of aldermen has never approved the granting of any permit by the building commissioner for the use of the land as a dump; the commissioner has not issued any permit; and the defendant has never applied for any permit from him.

The judge found that the defendant's premises are low, marshy land, not now adaptable for ordinary use, that they are fit for a dump, and that dumping will make them more rentable for general land purposes and will increase their value. He also found that the defendant is conducting dumping on its land as a business, and that it has entered into a contract with the city of Somerville to dump house refuse collections on the land. The use made of the defendant's premises prior to the filing of the bill is fully described by the testimony. Oral evidence and also photographs indicated that rubbish and refuse, ashes, cans, garbage, paper bags and papers were deposited upon the defendant's land, together with coal slag, which is a good solid filling and was used to cover over the material that had been dumped. The city of Medford appointed a person to supervise the dumping and to see that all fires were out at four o'clock in the afternoon. The board of health on February 2, 1945, notified the defendant that, unless a portable water pipe line was installed within ten days, its permit would be cancelled, and requested that all dumping be done by the reclamation or ditch method thereby eliminating fires. This portable water pipe line was never installed.

The defendant contends that a zoning ordinance that requires it to secure a permit from the building commissioner, the granting of which must first be approved by the board of aldermen, in order to fill its land, which must be filled before it can be put to any valuable use, is an arbitrary and unreasonable interference with its rights. The Legislature by virtue of art. 60 of the Amendments to the Constitution of Massachusetts has enacted legislation authorizing cities and towns to make zoning ordinances and by-laws "for the purpose of promoting the health, safety, convenience, morals or welfare of . . . [their] inhabitants," G. L. (Ter. Ed.) c. 40, § 25, as appearing in St. 1933, c. 269, § 1, and they may for the aforesaid purposes by ordinance or by-law regulate the use of vacant land. A landowner, even though he may be deprived by these local enactments of a use of his land that would be more profitable to him, has no just ground of complaint unless he shows that the provisions of these ordinances or by-laws as applied to him and his property are plainly arbitrary and unreasonable and have no rational relation to any of the purposes mentioned in the statute or to any of the purposes for which the police power may be legitimately exercised. *Euclid* v. *Ambler Realty Co.* 272 U. S. 365. *Nectow* v. *Cambridge*, 277 U. S. 183, 188. *Wilbur* v. *Newton*, 302 Mass. 38. *Simon* v. *Needham*, 311 Mass. 560. *Pittsfield* v. *Oleksak*, 313 Mass. 553. *Foster* v. *Mayor of Beverly*, 315 Mass. 567. *Burlington* v. *Dunn*, 318 Mass. 216.

The defendant has not been absolutely prohibited from filling its land. The city has gone no farther than to forbid it to fill the land by using it as a public or private dump unless it has secured a permit from the building commissioner that has been approved by the board of aldermen and also a permit from the board of health. It is open to the defendant to fill in the land in any manner it sees fit, other than by means of a public or private dump. It cannot use its land for the deposit of refuse collected from dwellings without a permit from the board of health. The nature of refuse of this character would seem to be a matter of common knowledge. The detrimental effect upon the in-

habitants of a city, their properties and the public welfare from the maintenance of a dump for the deposit of such refuse would also seem to be clear. The use of land for the purpose of dumping refuse from dwellings is a use that, if not a nuisance, has such harmful tendencies that unless guarded against a nuisance is likely to result. The characteristics of dumps and the effects that are likely to result from their maintenance appear from our own decisions. *Johnson* v. *Somerville*, 195 Mass. 370. *Saperstein* v. *Everett*, 265 Mass. 195. *Gosselin* v. *Northbridge*, 296 Mass. 351. *Maynard* v. *Carey Construction Co.* 302 Mass. 530. Even if we lay aside considerations affecting the public health, as did the board of health in revoking the defendant's permit, we cannot disregard the nature of the material dumped, the probability of odors from burning material, the inconvenience from smoke and the danger of fire. Indeed, it would seem that the mere prevention of fire would justify the ordinance requiring the approval of the board of aldermen for the issuance of a permit by the building commissioner for use of this vacant land as the site of a dump. *Salem* v. *Maynes*, 123 Mass. 372. *Newton* v. *Belger*, 143 Mass. 598. *Commonwealth* v. *Hayden*, 211 Mass. 296. *Storer* v. *Downey*, 215 Mass. 273. *Commonwealth* v. *Badger*, 243 Mass. 137. *Selectmen of Saugus* v. *Mathey*, 305 Mass. 184. *Thomas Cusack Co.* v. *Chicago*, 242 U. S. 526, 529. We see nothing in the application of the zoning ordinance to the defendant's property, restricting the use of its property for a private or public dump for the deposit of material of the nature shown by this record, that unreasonably or arbitrarily interferes with the defendant's rights. The ordinance goes no farther than the protection of the common welfare requires.

The defendant contends that the city had no authority to adopt a zoning ordinance requiring approval of the board of aldermen before a permit may be issued by the building commissioner to use land for a private or public dump, because the grant of such a power would interfere with the power possessed by the board of appeals by virtue of G. L. (Ter. Ed.) c. 40, § 30, as amended. See St. 1945, c. 167,

The city, doubtless, could pass an ordinance providing for the granting of an exception by the board of appeals in reference to dumps, and a permit by the board of appeals would authorize the use of the land for this purpose. *Lambert* v. *Board of Appeals of Lowell*, 295 Mass. 224. The city, however, was not bound to deal with the subject matter in such a manner. The zoning statutes, G. L. (Ter. Ed.) c. 40, §§ 25–30A, inclusive, do not in terms forbid the reservation by the legislative branch of the city of the power to approve permits for dumps or for any of the other objectionable uses designated in § 19 of the zoning ordinance. The general plan of this ordinance is to prohibit these objectionable uses and to provide for a limitation of this prohibition by the granting of a permit by the building commissioner which has been approved by the board of aldermen. The city in regulating the use of the defendant's land exercises a power specifically delegated to it by the Legislature by G. L. (Ter. Ed.) c. 40, § 25, as appearing in St. 1933, c. 269, § 1. This particular power does not spring from art. 60 of the Amendments to the Constitution of Massachusetts but is a part of the police power of the Commonwealth which has been conferred upon the city. *Burlington* v. *Dunn*, 318 Mass. 216. The city had the right to safeguard the public interest by requiring the approval of the board of aldermen before a permit should be issued for a dump, and the exercise of this power does not invade the province of the board of appeals or that of the board of health. *Commonwealth* v. *Parks*, 155 Mass. 531, 533. *Commonwealth* v. *Cutter*, 156 Mass. 52. *Commonwealth* v. *Hubley*, 172 Mass. 58, 59.

The defendant has not applied to the building commissioner for a permit, and it will be time enough to decide what remedy it may have in the case of a refusal by the aldermen to approve the application for a permit.

The granting or withholding of approval of a permit by the board of aldermen is not made dependent upon the untrammeled discretion of the board. The principles for guiding the board and the standards to be observed by the board are adequately stated in the ordinance with as much

certainty as the nature of the subject matter reasonably permits. *Guinan* v. *Famous Players-Lasky Corp.* 267 Mass. 501, 515. *General Outdoor Advertising Co. Inc.* v. *Department of Public Works*, 289 Mass. 149, 192. *Lexington* v. *Govenar*, 295 Mass. 31. *Commonwealth* v. *Hudson*, 315 Mass. 335, 341, 342. *Federal Radio Commission* v. *Nelson Brothers Bond & Mortgage Co.* 289 U. S. 266, 285. *Bowles* v. *Willingham*, 321 U. S. 503, 514, 515.

The ordinance of December 20, 1938, granting the board of health power to make rules and regulations for the control of all dumping of refuse and for the control of all places used for dumping of refuse did not leave the board of aldermen without power under § 19 of the zoning ordinance to approve permits. Such a permit is necessary for the location or establishment of a dump. A permit from the board of health is required for the operation or maintenance of the dump. A citizen sometimes requires two permits to do a certain act or to make a particular use of his property. *Commonwealth* v. *Ellis*, 158 Mass. 555. *Commonwealth* v. *McGann*, 213 Mass. 213. *Marchesi* v. *Selectmen of Winchester*, 312 Mass. 28.

The judge found that a comparatively small portion of the land has been casually and sporadically filled, and that such filling as was done prior to the amendment of the zoning ordinance on January 24, 1935, so as to include dumps, was not in fact or in law a prior existing nonconforming use. A careful examination of the testimony covering a period of a quarter of a century with reference to the times when materials, ranging from broken bricks from an old brick factory which was located in the vicinity and ashes to mud and peat excavated for the construction of the new Wellington Bridge in 1934 and 1935, were deposited on some portion of this lot of one hundred eighty-eight thousand square feet, together with other evidence tending to indicate that this land was not used for a dump until after 1935, does not demonstrate that the judge was plainly wrong in his finding that the land was not then utilized for a nonconforming use. On an appeal in equity findings made by a judge upon oral evidence cannot be reversed unless

they are shown to be plainly wrong. *Lowell Bar Association*
v. *Loeb*, 315 Mass. 176. *Silbert* v. *Kerstein*, 318 Mass. 476.
A finding permissible on the testimony is that the poten-
tialities present in 1935 had in later years and prior to the
filing of the bill developed into a full fledged dump. See
*Lexington* v. *Bean*, 272 Mass. 547; *Marblehead* v. *Rosenthal*,
316 Mass. 124; *Burlington* v. *Dunn*, 318 Mass. 216. Com-
pare *Cochran* v. *Roemer*, 287 Mass. 500; *Building Commis-
sioner of Medford* v. *McGrath*, 312 Mass. 461.

The fact that the city of Medford is dumping refuse upon
the defendant's land without any permit does not bar relief
on this bill in equity. The fact that some one else is violating
the ordinance furnishes no excuse or justification for a viola-
tion by the defendant. *Morley* v. *Police Commissioner of
Boston*, 261 Mass. 269, 280. The bill is brought to enforce
the zoning ordinance for the public welfare, *Lincoln* v.
*Giles*, 317 Mass. 185, 187, and the building inspector who
is charged with the enforcement of this ordinance is not
estopped by the alleged action of the city or its officials,
nor is the city itself. *Brookline* v. *Whidden*, 229 Mass. 485,
492, 493. *Building Commissioner of Brookline* v. *McManus*,
263 Mass. 270, 274. A city should comply with its ordi-
nances. "It may rightly be expected to set an example of
obedience to law." *Commonwealth* v. *Hudson*, 315 Mass.
335, 343. The defendant is not remediless if it really objects
to dumping by the city. It has not filed any counterclaim
or taken any other steps to protect its property. *Kelley* v.
*Board of Health of Peabody*, 248 Mass. 165, 169. *Suburban
Land Co. Inc.* v. *Billerica*, 314 Mass. 184, 194.

The defendant objects to the form of the decree on the
ground that it is unable to understand what it is restrained
from doing and especially whether it is restrained from per-
mitting the dumping of ashes from dwellings. Before dis-
cussing that subject, it is necessary to point out that the
building commissioner, who is the sole plaintiff, has no
authority to enforce the regulations of the board of health,
*Mayor of Cambridge* v. *Dean*, 300 Mass. 174, and bills for
injunctions to enforce zoning ordinances are usually and
properly brought in the name of the municipality. *Worces-*

*ter Board of Health* v. *Tupper,* 210 Mass. 378. *Lexington* v. *Bean,* 272 Mass. 547. This suit has been fully and fairly tried. It appears that the defendant is using its land for a dump without any permit from the building commissioner and in the absence of a permit from the board of health. If the bill is amended by substituting the city as a party plaintiff for the building commissioner, the city can enforce the zoning ordinance and the regulation of the board of health. The suit is one where such an amendment may well be allowed as is hereinafter provided. The case is considered on the assumption that such an amendment will be made. G. L. (Ter. Ed.) c. 231, § 125. *Thayer Academy* v. *Assessors of Braintree,* 232 Mass. 402. *Bauer* v. *Mitchell,* 247 Mass. 522. *New England Foundation Co. Inc.* v. *Elliott & Watrous, Inc.* 306 Mass. 177. *Tompkins* v. *Sullivan,* 313 Mass. 459.

We do not agree with the defendant that the violation of the health regulation is not in issue because the permit was revoked solely in compliance with the request of the board of aldermen. The defendant, as hereinafter appears in dealing with the petition for a writ of certiorari, has no just ground to quash the revocation of that permit. The bill alleges and the evidence proves that the defendant was maintaining a dump without a permit from the board of health. That is one of the matters involved in the present controversy and should now be settled.

A final decree should be as definite and certain as the circumstances allow in order that a defendant may know what conduct is prohibited and not be subjected to contempt proceedings that might possibly arise out of any ambiguity in the decree. *MacCormac* v. *Flynn,* 313 Mass. 547, 550. *Carroll* v. *Hinchley,* 316 Mass. 724, 731. *J. I. Case Co.* v. *National Labor Relations Board,* 321 U. S. 332, 341.

The first paragraph of the final decree enjoined the defendant from using its land "for the purpose of dumping garbage, ashes or other household refuse, unless such use shall have received the approval of the board of aldermen and the authorization of the board of health," and the second paragraph provided that nothing in the first para-

graph should be construed as preventing the defendant from making deposits on or filling in its land in any manner permitted by the zoning ordinance or in any manner that will not in the judgment of the board of health make it a menace to health or property. The defendant, in so far as the present suit is concerned, is not to be restrained from making any use of its land that is not forbidden by §§ 19 and 20 of the zoning ordinance and § 19 of the regulations of the board of health. The relief granted should be measured by the ordinance and the regulation. As to the first paragraph, it should be noted that the land cannot be used for a dump without a permit from the building commissioner and that, other than conditions that might be attached to this permit, the control over the dump is to be exercised by the board of health, and this includes the nature of the material dumped upon the land and the manner in which the work is done. The regulation of the board of health, § 19, establishing a form for granting approval for the use of land as a dump permits the "depositing or dumping of house dirt, rubbish and waste material . . . provided that no decomposing or offensive matter shall be dumped." Rubbish in this regulation is synonymous with refuse, and like the term refuse should be construed to include ashes produced in dwellings. *Vandine, petitioner*, 6 Pick. 187. *Haley* v. *Boston*, 191 Mass. 291, 293, 294. The dumping of garbage is prohibited by the said regulation in its present form.

The plaintiff is given leave, if so advised, within thirty days after the date of the rescript, to apply to the Superior Court for an amendment to his bill substituting the city as plaintiff. If such amendment is not made, a final decree is to be entered enjoining the defendant from using its land as a private or public dump without a permit from the plaintiff. If such amendment is made, the final decree is to be modified by striking out all of that portion of the first paragraph after the words "within the city of Medford" and by substituting therefor the following: "as a private or public dump without a permit from the building commissioner, the issuance of which has been approved by

the board of aldermen; or as a dumping ground for any decomposing or offensive matter; or for the dumping of house dirt, rubbish and waste material without a permit from the board of health." The second paragraph of that decree is to be struck out.

So ordered.

The petitioner's appeal from the judgment dismissing its petition for a writ of certiorari requires little discussion in view of what has already been said. The petitioner had no permit from the building commissioner, and without it cannot use its land as a site for a dump. In these circumstances, a permit from the board of health would not authorize the petitioner to maintain the dump. That permit did not authorize it to violate the zoning ordinance. *Commonwealth* v. *Fenton*, 139 Mass. 195. *Commonwealth* v. *Ellis*, 158 Mass. 555. *Milton* v. *Donnelly*, 306 Mass. 451. *Lincoln* v. *Giles*, 317 Mass. 185. At the time of its revocation without notice to the petitioner or a hearing the permit was inoperative although outstanding and for aught that appears in the record it might never become operative. A zoning ordinance, in one instance at least, is to be considered superior to a health regulation. The authority of a board of health to assign certain places for the exercise of an offensive trade or employment must yield to the provisions of the statutes and ordinances pertaining to zoning. G. L. (Ter. Ed.) c. 111, § 143, as appearing in St. 1933, c. 269, § 2. *Lincoln* v. *Murphy*, 314 Mass. 16. The writ does not issue as matter of right but rests in sound judicial discretion. It is the general rule, where, as here, there is no showing of substantial injury or manifest injustice, that certiorari will not issue. *Boston* v. *White Fuel Corp.* 294 Mass. 258. *Mullholland* v. *State Racing Commission*, 295 Mass. 286. *Walsh* v. *District Court of Springfield*, 297 Mass. 472. The revocation of the permit results in no hardship to the petitioner unless and until it has complied with the zoning ordinance. See *Vorenberg* v. *Bunnell*, 257 Mass. 399, 408; *Jenney* v. *Hynes*, 282 Mass. 182, 194; *Brackett* v. *Board of Appeal of Boston*, 311 Mass. 52, 57.

*Judgment affirmed.*