**James FARINA CORPORATION**
**Plaintiff**
**vs.**
**CITY OF NEWTON, Defendant**

**No. 95840**

Land Court Department
of the Trial Court
Commonwealth of Massachusetts

**July 17, 1981**

**Phillip R. White, Jr.,** counsel for plaintiff
**Howard R. Palmer, Asst. A.G.,** counsel for defendant
**G. Michael Pierce, Asst. City Solicitor, City of Newton,** counsel for defendant

### DECISION

This complaint (later amended) was brought under the provisions of G.L. c. 240, sec. 14A and c. 185, sec. 1 (j 1/2) by the owner of a freehold estate in possession of land to determine the validity of an amendment to the zoning ordinances of the City of Newton (the "City") as it affects certain lands owned by the plaintiff corporation at 130 Bridge Street in said City containing 13,228 square feet and shown as Lots 8 and 9 on Assessor's plans, Ward 1, Section 14, Block 1 (the "premises").

The complaint alleges that the City failed to conduct properly noticed

hearings before adopting Ordinance R-13 (the "amendment") on June 18, 1979, which changed the zoning of plaintiff's property from "Manufacturing" to "Business A." The plaintiff seeks a declaration that the required legal procedures were not followed in the adoption of the amendment; that the amendment violates both the Massachusetts and the United States Constitution as well as the Massachusetts Zoning Enabling Act; and that the amendment is invalid as the change violates the requirement of uniformity of classification and constitutes spot zoning.

The defendant's answer essentially admits all factual allegations relative to the adoption of the amendment and states that the complaint fails to state a claim upon which relief can be granted.

Two days of trial were held at which a stenographer was sworn to record the testimony of five witnesses and during which eight exhibits were introduced into evidence. All exhibits are incorporated herein by reference for the purpose of any appeal. The parties submitted a statement of agreed facts which the Court incorporates into its findings.

Based on all of the evidence, including the aforementioned and a view of the premises taken with counsel, the Court finds the following facts:

The premises, comprised of two lots on the easterly side of Bridge Street, is located within a block bounded by Bridge, California, Chapel and Watertown Streets in the Nonantum section of the city. In 1922 when the City adopted its original zoning ordinances the entire block was zoned manufacturing, as was the block on the westerly side of Bridge Street. From 1922 until the adoption of the ordinance being challenged herein, the premises have remained zoned for manufacturing, while the area surrounding the premises has changed as follows:

In 1936 a strip along the northerly side of Watertown Street, approximately 150 feet wide, was zoned business, except for what is now municipally owned unzoned land at the corner of Watertown and Bridge Streets. Also in 1936, on the California Street end of the block, approximately one-third of the block was changed to residence. On the westerly side of Bridge Street, the land from Watertown to Chandler Street was zoned business; from Chandler to Silver Lake Avenue remained manufacturing; and the balance of the block was zoned residence. In 1940 the City undertook a major rezoning and the land between Chandler and Silver Lake Avenue was rezoned for business.

The last major rezoning occurred in 1951; all subsequent changes having been made by amendment. At that time the City rezoned the land from Chandler to Silver Lake Avenue on the westerly side on Bridge Street from manufacturing to residence, which resulted in the entire westerly side of Bridge Street being zoned residential. In 1951 the only change in the zoning of the block in which the premises are located was an enlargement of the manufacturing district toward California Street.

The actual uses of the premises described above and of the neighborhood have not changed appreciably in the past 45 years. Except for the fact that an old single family house is located on the Lot 8 portion of the locus, the topography of the locus is the same as the topography of the other land located in the manufacturing zone on the same block. It is also topographically the same as the westerly side of Bridge Street which is zoned residential.

In 1962 the City began a Community Renewal Program (CRP). The relevant portions of the CRP report issued in 1964 described the existing land use in Nonantum as follows:

"The existing land use pattern in the Nonantum Study Area is well mixed and contains heavy and light industry, commercial uses

and offices, single family, two-family and multi-family residential. This mixed pattern stems from the early development of the Nonantum section as a combination industrial and residential area. Development of industrial uses on both sides of the Charles River resulted in the establishment of moderate to low income housing in the Nonantum section. The majority of these residential structures remain in the area and its character has not materially changed in recent years. There is a shopping center on Watertown Street which extends east from Adams Street for a distance of three blocks. On-street parking complicates the problems of this center. In addition, there are commercial properties scattered along California Street . . .''

''Industrial uses are also scattered throughout the central section of the study area . . .''

The suggested land use pattern for Nonantum included residential, industrial and some commercial uses. The report concluded:

''. . . the long-range goal of a renewal program in the Nonantum Study Area should be the retention of the neighborhood. This is particularly true of the residential sections which provide living accommodations for families of modest incomes.

A need exists for limited expansion of the existing manufacturing areas and elimination of non-conforming uses. A consolidation of retail and service facilities into a single center with adequate off-street parking also appears to be desirable.''

In 1965 a comprehensive plan issued which was based on all the information developed by the City prior to that date, including the CRP.

On or about April 10, 1979, a petition was filed by Alderman Morris with the Newton Board of Aldermen on behalf of 44 Newton residents to modify zoning district boundary lines to change the zoning of the premises and four additional lots from "Manufacturing" to "Residence D". The four additional lots contain 52,575 square feet and are shown on Assessor's Plan Ward 1, Section 14, Block 1, as Lots 7, 12A, 13 and a portion of Lot 11, which lot is also owned by the plaintiff.

At the time of filing the petition, the above mentioned lots were put to the following uses: The premises contained a single family house and garage on Lot 8 and Lot 9 was vacant and used as a side yard for the house; Lot 7 contained two garage buildings which, over the years, had been used as an auto repair shop, a machine shop and a plumber and welder's shop; the portion of Lot 11 included in the proposed rezoning was a paved area facing on Bridge Street used as the entrance to the shipping and receiving area and for parking assessory to the plaintiff's manufacturing concern located on Chapel Street; and Lot 13, which faces on Bridge Street, contained a residence and garage and was also used for the storage of landscaping equipment. A twenty-five foot unzoned private way separated Lots 7 and 8 from Lots 4, 5 and 6 and connected Lot 7 to Bridge Street.

A public hearing on the proposed zoning district boundary line change was held before a properly noticed joint meeting of the Land Use Committee of the Board of Aldermen and the Planning and Development Board on May 9, 1979.[1] Prior to the public hearing twenty

[1] In the City of Newton the Land Use Committee of the Board of Aldermen is the committee designated by the Board to hold public hearings on zoning ordinances and amendments pursuant to G.L. c. 40A, § 5 and what is referred to as the

percent of the owners of the land to be included in the zone change filed a formal protest to the proposed zoning district boundary line changes and petitions both pro and con were received by the Land Use Committee. Also prior to the public hearing on May 9, 1979, the Director of Planning and Development prepared and filed a memorandum with the Mayor, the Board of Aldermen and the Planning and Development Board on the proposed zoning change, wherein it was recommended that the petitioned for zone change be approved. At the May 9th hearing, Alderman Morris presented his petition and people were heard both pro and con. The hearing was closed, and the people present were advised that a working session of the Land Use Committee would be held on June 5, 1979.

By letter dated May 15, 1979, the Planning and Development Board reported to the Land Use Committee that it was withholding action on the proposed zoning change until it received an opinion from the City Solicitor as to its validity. No further report was made by the Board within the 21 day period for reports on such matters.

On or about June 5, 1979, the Land Use Committee of the Board of Aldermen held a working session without formal notice where the proposed rezoning was discussed and members of the public were allowed to participate. By a vote of 4-3, the Committee voted not to recommend the proposed zoning district boundary line change. Another motion to rezone only the premises to "Residence D" was also defeated. Several neighborhood people attended the June 5th meeting, including the plaintiff corporation's president and its counsel. An announcement was made at the meeting that the matter would be reported to the full Board of Aldermen and that a final vote would be taken on June 18, 1979. It was also announced that a three-fourths vote of the Board of Aldermen would be required to overturn the Committee's recommendation.

On or about June 6, 1979, the Planning and Development Board voted to deny the petition to rezone the six lots to "Residence D". Sometime between June 6, 1979 and June 18, 1979, the Board rescinded its denial following Alderman Morris' request for reconsideration and proposal of an amended petition which included the rezoning of Lots 8 and 9 only to "Residence D".

A public meeting of the Board of Aldermen was held on June 18, 1979, in the Aldermen's Chambers of Newton City Hall and the president of plaintiff corporation was present with counsel. The original proposed zoning change which called for the change of six lots from "Manufacturing" to "Residence D" was on the agenda as a second call item, requiring debate. During the recess between the first and second calls Alderman Morris, the Chairman of the Land Use Committee, met informally with several members of the committee in the committee room adjacent to the Aldermen's Chambers. No people outside the committee were invited to attend. At this informal meeting Alderman Morris proposed that the premises be rezoned to "Business A".

When the full Board of Aldermen reconvened and the original proposed zoning ordinance was called for debate, Alderman Morris moved that only the premises be rezoned "Business A".

The zoning of Lot 7 (a 25 foot private way), a portion of Lot 11, Lots 12A and 13 was left unchanged, resulting in the premises being bounded on the north and east by manufacturing zoned and used land; on the south by a private way and on the other side of the private way an unzoned lot currently used for a public library; and on the west side by Bridge

---

Planning and Development Board in the City of Newton is the Planning Board as defined by G.L. c. 40A, § 5.

Street. The members of the Land Use Committee were polled and voted in favor of the revised amendment 5-1, following which the Board of Aldermen passed the amendment by a three-fourths vote.

The proposed revised amendment read as follows:

"Section 24-4 of the Revised Ordinances of Newton, 1973, as amended, be and is hereby further amended by amending sheets of plans entitled 'City of Newton, Mass., Zoning Plans' dated July 21, 1951, as amended to date, by changing certain district boundaries from present zoning district to the Business A District. Changing the following described real estate now in the Manufacturing District to the Business A District:

Land on Bridge Street, Ward 1, Section 14, Block 1, Lots 8 and 9, containing together 13,228 sq. ft. as shown on a plan entitled 'Plan to accompany petition of Alderman Terry Morris for Zone Change: Bridge Street, Ward 1.''

No written or published notice to owners or abutters was given that a zoning change as represented by Ordinance No. R-13 would be considered on June 18, 1979, or at anytime.

Two issues are before the Court for determination: First, was Ordinance No. R-13 validly adopted by the Newton Board of Aldermen on June 18, 1979; and second, did the rezoning of Lots 8 and 9 from "Manufacturing" to "Business A" constitute spot zoning?[2]

1. The plaintiff argues that the City could not formulate the proposed zoning change during a private meeting and that a substantive change requires a new public hearing with appropriate notice pursuant to G.L. c. 40A, sec. 5 which reads as follows:

"No zoning ordinance or by-law or amendment thereto shall be adopted until after the planning board in a city or town, and the city council or a committee designated or appointed for the purpose by said council has held a public hearing thereon at which interested persons shall be given an opportunity to be heard."

The cases construing G.L. c. 40A, sec. 6, predecessor to sec. 5, consistently held that a new hearing is required only when "fundamental" changes have been made. See **Johnson v. Framingham,** 354 Mass. 750, 753 (1968); **Doliner v. Town Clerk of Millis,** 343 Mass. 10, 13 (1961); **Burlington v. Dunn,** 318 Mass. 216, 218-19 (1945). The question then becomes whether the revision of the proposed zoning amendment by the Land Use Committee is such a fundamental change as to require new notice, publication and hearing before presentation to the Board of Aldermen. I hold that it is not and that, therefore, the amended ordinance was validly adopted on June 18, 1979.

The Court does not agree with the plaintiff that the present case is controlled by **Fish v. Canton,** 322 Mass. 219 (1948). In **Fish, supra,** the original article in the warrant upon which the planning board held a hearing sought to repeal the town's zoning by-law in its entirety. Following an adverse report by the planning board the town meeting voted against the article. The article was reconsidered at a subsequent "adjourned" meeting and it was voted to amend the area and frontage requirements in two districts, and to transfer certain lands from one district to another. This was held to be "a radically different amendment" and the Court further held that the change was "truly fundamental and could not be valid in the absence of a hearing and report on the new proposal by the planning board . . . the identity of the original proposed

---

[2] The plaintiff has not raised an issue as to the adequacy of notice of the Board of Aldermen meeting.

article was utterly changed." 322 Mass. at 223.

Inasmuch as the purpose for notification and public hearing is to obtain public sentiment so that proper revisions can be made, **Doliner v. Town Clerk of Millis,** 343 Mass. 10 (1961), it is clear in **Fish, supra,** that the public was given no opportunity to express its opinion as to any of the specific zoning changes that were enacted.

In the instant case the plaintiff and other members of the public had full opportunity to and did, in fact, express their views as to the rezoning of the premises within the context of the properly noticed and conducted hearing on the original proposal which would have changed six lots from "Manufacturing" to "Residence D". The record shows that, in response to the original proposal, many interested parties, including the plaintiff, expressed their sentiments and concerns about the status of the premises and surrounding neighborhood to the Planning Board and the Land Use Committee. It is unlikely that another hearing on the change of the premises from "Manufacturing" to "Business A" would have elicited any further information.

The present case more closely resembles **Doliner** and **Burlington,** both **supra,** and both of which were decided adverse to the plaintiff's contention. In **Burlington, supra,** the Planning Board held a hearing and approved a proposed by-law with an accompanying map which was inserted in the town meeting warrant. Prior to the meeting the Planning Board altered the map by changing the zoning of five additional parcels scattered throughout the town. The by-law and new map were subsequently adopted at town meeting.

The Court held that the Planning Board was not required to give any further public hearing because "(t)he amendments (to the map) were not of a fundamental character. They did not change the identity of the proposal before

the board. They were designed merely to perfect that proposal." 318 Mass. at 218-19.

In the instant case, I rule that the changes between the original proposed amendment and Ordinance R-13 were not fundamental in nature and, therefore, did not give rise to the necessity for further public hearings.

II. The plaintiff's second argument is that the rezoning of the premises constitutes spot zoning. Certain well established principles have evolved in the adjudication of zoning challenges. A zoning ordinance enjoys a presumption of validity, and where its reasonableness is fairly debatable, the judgment of the local authorities will be sustained. **Crall v. Leominster,** 362 Mass. 95 (1975); **Turnpike Realty Co. v. Dedham,** 362 Mass. 221 (1972), **Cert. Den.,** 409 U.S. 1108 (1973); **Lanner v. Board of Appeals of Tewksbury,** 348 Mass. 220 (1964). To overcome this presumption, the complaining party must show beyond a reasonable doubt that the ordinance conflicts with the enabling act or the constitution. **Addison-Wesley Publishing Co., Inc. v. Reading,** 354 Mass. 181 (1968). The amendment will be held invalid if it is arbitrary, unreasonable, or substantially unrelated to the public health, safety, morals, or general welfare. **Nectow v. Cambridge,** 277 U.S. 183 (1928); **Schertzer v. Somerville,** 345 Mass. 747 (1963).

For the reasons stated below, I rule that the **Schertzer** case is determinative of this proceeding and that Ordinance R-13 violates the Zoning Enabling Act's requirement of uniform classification and is, therefore, invalid.

In **Schertzer** the rezoned premises had been commercially zoned since the adoption of the City's original zoning ordinance in 1925. Between 1925 and 1959 (when the amendment passed) the use of the area had progressively changed from residential to business use, consistent with adjacent land also zoned and used for

business. At the request of citizens who objected to the plaintiff's proposed business use, the City rezoned the premises residential. The Judge found, **inter alia,** that all the residences on the street were built prior to 1925, that the traffic was four to five times as heavy at the time the amendment passed as it was in 1925, and there had been a "general erosion of residences in the vicinity . . . and a gradual change and conversion of property from residential to industrial and commercial use." **Schertzer, supra** at 750. The Court held that the separation of the premises from similar adjacent business properties was arbitrary and unreasonable.

In the instant case the rezoned premises have been zoned for manufacturing since 1922 when the City adopted its original zoning ordinances. While the usage of the area surrounding the premises is mixed residential, commercial and manufacturing, the block in which the premises are located has been and is substantially committed to manufacturing usage. The zoning of surrounding areas has been changed since 1922 resulting in all three zoning classifications being present in a three block area of the City.

While the original proposed amendment was properly characterized as a boundary district line change, the ordinance as passed cannot be characterized as such. The effect of Ordinance R-13 was to create an isolated business district of two lots now abutted on two sides by a manufacturing zone, on one side by a public way (adjacent to a residential zone) and on one side by a private way, bordered on the other side by unzoned city property presently used as a library.

While there is a business district situated diagonally in back of the premises, it cannot reasonably be argued that the rezoning of the premises merely extends that district because those properties front on Watertown Street, a major thoroughfare, which differs substantially in character from Bridge Street.

I have found that the rezoned premises directly adjoin a large expanse of property exclusively devoted to non-business uses which is topographically indistinguishable from the premises. The rezoning of this small parcel of land singled out the premises for different treatment as compared to other parcels in the same district and of the same character. I have also found that the rezoning of the premises was in direct response to the desires of the residents of Bridge Street who own houses opposite the premises to prevent the plaintiff from putting its land to manufacturing use. Such action is arbitrary and unreasonable and violative of the enabling act. See **Canteen Corporation v. Pittsfield,** 4 Mass. App. Ct. 289, 291 (1976).

For the reasons set forth I find and rule that the plaintiff has proven beyond a reasonable doubt that the premises were singled out for special treatment notwithstanding the fact that they are indistinguishable from a large area of adjacent properties. I also find and rule that Ordinance R-13 is arbitrary and substantially unrelated to the public health, safety, morals or general welfare.

Accordingly, plaintiff's request for rulings of law nos. 7, 8, 9, 10 and 11 are granted and nos. 2, 4 and 6 are denied. Request no. 5, although purporting to be a request for a ruling of law, is a request for a finding of fact which, because it is inconsistent with the facts found, is denied. Requests no. 1 and 3 are denied as inapplicable to the facts found.

Judgment to enter accordingly.

**John E. Fenton, Jr., Justice**